Witness before one-man grand jury who had been granted immunity from State prosecution with reference to answers to questions propounded to him about his connection with the collection of moneys for the protection of handbook gambling houses cannot be required to give answers that would lead straight to Federal prosecution, but the privilege claimed must not be recalcitrantly asserted too soon (Const. 1908, art. 2, § 16; 3 Comp. Laws 1929, §§ 17217, 17220).

2. SAME—PROTECTION OF GAMBLING—STATE IMMUNITY FROM PROSE-
   CUTION—FEDERAL INCOME TAX.

   Witness before one-man grand jury investigating gambling
   who had been granted immunity from State prosecution with
   reference to answers to questions propounded to him about
   his connection with collection of moneys for the protection
   of handbook gambling houses in a certain police precinct
   was not placed in imminent peril of Federal prosecution for
   income tax law violations (Const. 1908, art. 2, § 16; 3 Comp.
   Laws 1929, §§ 17217, 17220).

Habeas corpus proceedings by James Ward with
accompanying certiorari to Honorable Homer Fer-
guson, Wayne circuit judge, to obtain release from
commitment to county jail for contempt of court in
one-man grand jury proceeding. Submitted October
4, 1940. (Calendar No. 41,286.) Writs dismissed
December 11, 1940.

*P. J. M. Hally,* for petitioner.

*Chester P. O'Hara, William D. Brusstar,* and *Guy
W. Jensen (Wendell Brown,* of counsel), *amici
curiae.*

BUSHNELL, C. J. Judge Homer Ferguson, sitting
as a one-man grand jury, under the authority of
3 Comp. Laws 1929, § 17217 *et seq.* (Stat. Ann.
§ 28.943 *et seq.*), committed petitioner Ward for
contempt. When called as a witness, petitioner,
claiming to stand upon his constitutional rights, re-
fused to answer the following questions:

"1. Did you ever receive any money from the
operator of any handbook gambling house in the
first police precinct in the city of Detroit, State of
Michigan?

"2. Did you ever collect money from the operator
or agent of any handbook in the city of Detroit to

permit and allow the operation of their handbook gambling house?

"3. To what person or persons did you pay over the money collected from handbook gambling houses?

"4. Whom did you succeed as collector of graft protection money from the operators of handbook gambling houses in the city of Detroit?"

The assistant attorney general filed the statutory motion provided for in 3 Comp. Laws 1929, § 17220 (Stat. Ann. § 28.946), and immunity was granted Ward. Ward continued his refusal to answer, was found guilty of contempt, and sentenced to be confined in the county jail for 60 days, with a fine of $100. The sentence contained a proviso that it should run until Ward had answered the questions if such answers were given within 60 days. Petitioner served his sentence under this commitment and does not contest its validity. We do not pass upon the contempt of May 31, 1940, and only mention it in this opinion because of its connection with the question raised by petitioner as to the second alleged contempt.

Upon completion of his sentence for contempt, Ward was again brought before the grand jury and interrogated on July 29, 1940. He again refused to answer certain questions put to him on the ground that his answers would incriminate him "in the State and Federal court." The assistant attorney general again filed the statutory motion and the court again granted immunity. The motion contained these specific questions:

"1. Did you have an understanding and agreement with Thomas (Red) Miller relative to the collections of protection moneys from the handbook gambling houses in the first police precinct, Detroit, Michigan?

"2. When did you become the collector of pay-off moneys from the handbook gambling houses operating in the first police precinct, Detroit, Michigan?"

The return shows that the witness was asked the first question by both the assistant attorney general and the grand jury in the following form:

"With whom did you have an understanding and agreement relative to the collection of protection moneys from the handbook gambling houses in the first police precinct, Detroit, Michigan?"

The petitioner answered:

"I stand on my constitutional rights,* and refuse to answer the question for fear I may incriminate myself in the State and Federal courts."

Upon repeated refusal to answer, Ward was again adjudged guilty of contempt, ordered to be confined in the county jail for a period of 60 days, to pay a fine of $100, et cetera. Petitioner brought this writ of habeas corpus with ancillary writ of certiorari to test the validity of his second commitment.

As said in *Re Schnitzer, ante,* 736, and in *Re Cohen, post,* 748, Ward cannot be required to give answers "that will lead straight to Federal prosecution," but this "privilege must not be recalcitrantly asserted too soon." In accordance with the reasoning in the *Schnitzer* opinion, the questions put to Ward do not contain inquiries that place him in imminent peril of Federal prosecution. *Mason* v. *United States,* 244 U. S. 362 (37 Sup. Ct. 621), and *United States* v. *Sullivan,* 274 U. S. 259 (47 Sup. Ct. 607, 51 A. L. R. 1020).

Some text writers have gone so far as to say that the more recent cases support the rule that the privi-

* See Const. 1908, art. 2, § 16.—REPORTER.

lege against self-incrimination does not extend to protect the witness as to matters that may tend to incriminate him under the laws of another jurisdiction. This is the Federal rule. See *United States* v. *Murdock,* 284 U. S. 141 (52 Sup. Ct. 63, 82 A. L. R. 1376); annotations in 82 A. L. R. 1380, supplementing annotations in 59 A. L. R. 895; 49 Yale Law Journal, 1064; and 45 Harvard Law Review, 595.

For the purpose of this opinion, it is unnecessary to consider whether we should extend the implication of our language in *Re Watson,* 293 Mich. 263, to conform to the Federal rule. So far as the questions asked Ward are concerned, we feel that the answers would not "lead straight to Federal prosecution."

Having found that the commitment of July 29, 1940, did not deprive petitioner of his constitutional safeguard against self-incrimination, we proceed to the further constitutional questions raised by Ward: (a) Whether the order of commitment of July 29, 1940, constitutes double jeopardy, and (b) whether cruel and unusual punishment was inflicted.

Mr. Justice WIEST discussed the latter subject at length in his dissenting opinion in *Smith* v. *Wayne Probate Judge,* 231 Mich. 409, at page 433 (40 A. L. R. 515) (the so-called sterilization case). The constitutional prohibition (Const. 1908, art. 2, § 15) is directed not so much against the duration of the punishment as to its character. *People* v. *Harwood,* 286 Mich. 96; and see 16 C. J. p. 1354, § 3192, and cases therein cited. It applies to something inhuman and barbarous,—torture and the like (*Weems* v. *United States,* 217 U. S. 349 [30 Sup. Ct. 544, 19 Ann. Cas. 705]), and is confined to criminal matters. *Smith* v. *Wayne Probate Judge, supra.* Ward was not subjected to such punishment by the imposition of his second sentence.

With respect to the question of double jeopardy, our attention has not been directed to any authorities in this State which hold that a second commitment for contempt constitutes double jeopardy. They are available elsewhere to the effect that the doctrine of double jeopardy is not applicable to proceedings to punish for contempt. In *State* v. *Kasherman,* 177 Minn. 200 (224 N. W. 838), it was held that each succeeding refusal to answer the same question is a new contempt. In *Ex Parte Stice,* 70 Cal. 51 (11 Pac. 459), Stice was called as a witness on the trial of a criminal prosecution and refused to be sworn. He was adjudged guilty of contempt and imprisoned for a day. Upon the expiration of his imprisonment, he was again called as a witness in the same case and again refused to be sworn. He was thereupon adjudged guilty and again committed. It was held that each separate refusal was a separate contempt and the two punishments were upheld.

Ward's successive refusals to answer are separate and distinct contempts and his punishment therefor does not violate the constitutional prohibition against double jeopardy. Const. 1908, art. 2, § 14. The writs are dismissed.

SHARPE and CHANDLER, JJ., concurred with BUSHNELL, C. J. BOYLES, J., concurred in the result.

WIEST, J. (*concurring*). I concur in the result on the ground stated by Judge Cardozo in *Re Doyle,* 257 N. Y. 244, 267 (177 N. E. 489, 87 A. L. R. 418):

"We put aside as remote and unsubstantial the supposed peril of exposure to prosecution for the making of false tax returns to State or Federal officers."

NORTH and BUTZEL, JJ., concurred with WIEST, J.

McALLISTER, J. (*concurring*). In a State court, the privilege against self-incrimination protects a witness as to matters that tend to incriminate him in a Federal prosecution. *In re Watson,* 293 Mich. 263. In the instant case, the answers to the question propounded would not tend so to incriminate peti-tioner.

The writs, therefore, should be dismissed.