## G. M. COBURN v. EMIL SCHROEDER.

No. A-10019. April 2, 1941.
(112 P. 2d 191.)

Springer & Springer, of Stillwater, for petitioner.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and D. P. Hervey, Co. Atty., Payne County, of Stillwater, for respondent.

JONES, J. This is an original proceeding, wherein the petitioner, G. M. Coburn, by habeas corpus, seeks to procure his release from the county jail of Payne county.

The petition filed herein alleges in substance as follows:

"That the petitioner is confined in the common jail of Payne county by virtue of a commitment issued out of the district court of Payne county, Oklahoma, in a certain action wherein the petitioner was convicted of a second violation of the prohibitory laws of the State of Oklahoma, and adjudged to pay a fine of $100, and to be confined in the county jail for a period of 90 days.

"That the petitioner is afflicted with a dangerous heart ailment and that the confinement in the county jail of Payne county has enhanced, and will continue to aggravate the dangerous condition, and is liable to cause the death of the petitioner.

"The petitioner prays that the writ of habeas corpus issue, directed to the respondent, who is the sheriff of Payne county, and that upon a hearing. that he be discharged from custody."

The respondent filed his answer in which he admits that the petitioner is confined in the county jail by virtue of the commitment set forth in the petition. The respondent specifically denies that the confinement of the petitioner is illegal, and further denies that the petitioner is afflicted with a heart ailment which will be aggravated as a result of any confinement in the county jail of Payne county.

"The respondent further states that the petition of the plaintiff does not show facts sufficient to maintain a cause of action in favor of the petitioner and against the respondent."

By agreement of the parties hereto, Paul L. Myrick, county judge of Payne county, was appointed commissioner by the Criminal Court of Appeals to take the testimony of certain witnesses in Payne county.

The facts are that on May 24, 1939, the petitioner was convicted of the felonious possession of intoxicating liquor, and sentenced to pay a fine of $100, and serve a term of 90 days in the county jail. Upon appeal, this case was affirmed by the Criminal Court of Appeals and a mandate issued to the district court of Payne county on January 31, 1941. Coburn v. State, 70 Okla. Cr. 329, 106 P. 2d 533. Subsequently, the defendant was incarcerated in the county jail to serve the sentence, where he served 28 days before he was released on bond by this court, pending the final disposition of this proceeding.

In the argument herein, the petitioner made two contentions:

(1) That the punishment imposed was a cruel and unusual punishment and should be modified.

(2) That the prisoner is in such poor health that continued confinement will endanger his life, and that this court should discharge him from custody.

The first contention is wholly without merit. The petitioner was convicted in the district court of Payne county. He was convicted of a felony in which the punishment under the statute (sec. 2632, O. S. 1931, 37 Okla. St. Ann. § 12) could have been five years in the State Penitentiary and a fine of $2,000.

Upon appeal to this court, no question of cruel and excessive punishment was raised; and it is quite clear that the petitioner cannot now in a habeas corpus proceeding raise this point. It is established law that the writ of habeas corpus cannot be used to perform the office of a writ of error on appeal. Ex parte Sneed, 46 Okla. Cr. 53, 287 P. 1062; Ex parte Justus, 3 Okla. Cr. 111, 104 P. 933, 25 L. R. A., N. S., 483; In re Talley, 4 Okla. Cr. 398, 112 P. 36, 31 L. R. A., N. S., 805; Ex parte Rupert, 6 Okla. Cr. 90, 116 P. 350; Ex parte Lair, 29 Okla. Cr. 282, 233 P. 789; Ex parte Dunn, 33 Okla. Cr. 190, 242 P. 574; Ex parte Hollingshead, 24 Okla. Cr. 131, 216 P. 486.

An examination of the testimony taken before the county judge discloses a disputed question of fact as to the physical condition of the petitioner. The county physician testified that he had examined the petitioner three times while he was confined in jail, to wit, on February 3rd, February 10th, and February 24th, that the first time he examined petitioner his pulse was 100 and blood pressure was 184/108; that on February 10th, his blood pressure was 178/104; and on February 24th, his blood pressure was 154/92 and his pulse rate was 74; that

from all physical indications, the condition of the petitioner had improved materially by reason of his confinement in jail. That if he had a private patient with the same ailment from which the petitioner was suffering, he would give him the same treatment that the petitioner received in jail.

L. A. Mitchell testified that he had been treating the petitioner for high blood pressure and arteriosclerosis of the vessels of the body.

"That persons suffering from this ailment will often live a long time, but that they are incurably sick. That a person in that condition could not perform hard manual labor long. That he could do chores and work around, but couldn't dig ditches or work on the railroad. That he has not seen the petitioner since he went into jail. That confinement in jail itself, so far as the rest which the petitioner would receive is concerned, would be beneficial; but that if conditions in the jail are not conducive to quietness so that the petitioner would have quiet and peace of mind, as well as peace of body, that the confinement would be hard on his heart."

The petitioner testified that he was 69 years of age and had been taking treatment for his heart ailment about two years; that when the ailment strikes him, "It swells my ribs right here and burns until I can't get my breath." That the worry and anxiety over his confinement in jail had aggravated his condition; that he had had spells every night while he was incarcerated in jail; that he was ready and willing to pay the fine and costs assessed against him if he could procure relief from serving the jail sentence.

Two of the persons who were serving sentences in the jail at the time the petitioner was confined testified on behalf of the petitioner, that the petitioner would get up at nights, and walk around, and state that he couldn't get his breath.

The jailor testified that during all of the time the petitioner was confined in jail, he never knew of his having any sinking spells, and that not once during the 28 days that he was in jail did he ever make any complaint to him; that he never did ask for a doctor, but that he had the county health physician check the petitioner on each Monday.

The proof further discloses that the petitioner had made application for clemency, and that after the Pardon and Parole Attorney had made an investigation, in which statements were taken from the petitioner and many other individuals at Stillwater, the application was denied. It was after the denial of the application for clemency that this proceeding was instituted in the Criminal Court of Appeals.

Without stating our conclusions upon the question of fact as to the actual physical condition of the petitioner, we deem it only necessary to state that in a habeas corpus proceeding, where no question is raised as to the validity of a judgment upon which a commitment is based, but the only question involved is one of fact as to the health of the accused, such question involves a matter of clemency to be addressed to the Governor. Since the petitioner may again seek clemency at the hands of the Governor, it is not proper that we express an opinion as to this man's physical condition, as such question is a question for the sole determination of the Chief Executive in whom the power to extend clemency is vested.

Section 693, O. S. 1931, 12 Okla. St. Ann. § 1342, provides that no court or judge shall inquire into the legality of any judgment or process whereby the party is in custody or discharge him when the term of commitment has not expired upon any process issued on any final judgment of a court of competent jurisdiction. See, also, Ex parte

Woods, 7 Okla. Cr. 645, 125 P. 440; In re Talley, supra; Ex parte Hollingshead, supra; Ex parte Harry, 6 Okla. Cr. 168, 117 P. 726.

Article 6, sec. 10, Oklahoma Constitution, Okla. St. Ann. Const., provides:

"The Governor shall have power to grant, after conviction, reprieves, commutations, paroles, and pardons for all offenses, except cases of impeachment, upon such conditions and with such restrictions and limitations as he may deem proper, subject to such regulations as may be prescribed by law. * * *"

We have held in Ex parte Ridley, 3 Okla. Cr. 350, 106 P. 549, 26 L. R. A., N. S., 110, in one of the early opinions of this court by Judge Doyle, that under this constitutional provision, the Governor has exclusive power to parole a convict, with such restrictions and limitations as he may deem proper; and any law which restricted this power would be unconstitutional and void. This case further held that under our Constitution, it is the duty and prerogative of the legislative department to define crime and fix the maximum and minimum penalty, and to fix by law the kind and manner of punishment, and provide such disciplinary regulation for prisoners, not in conflict with the fundamental law, as the Legislature deems best. It is the duty of the judiciary department to try offenders against those laws, and upon conviction to sentence them under the statute. That after a conviction has become final, it is not within the functions of the courts or Legislature to interfere with the pardoning power of the Chief Executive.

Under this section, no one is given power to reprieve, commute, parole, or pardon an offender for any cause, with the exception of the Governor.

The office of Governor is the proper one with which to lodge the responsibility for determining whether the pe-

titioner is a fit subject for clemency. It is beyond the power of the courts or the Legislature to determine whether the Chief Executive acts wisely or unwisely in passing upon applications for clemency. The exercise of executive clemency is a matter of discretion. It is an official duty vested in the Governor, not for the benefit of the convict only, but for the welfare of the people.

The petitioner has heretofore invoked the jurisdiction of this court for the purpose of determining the correctness of the judgment of conviction rendered against him by the district court of Payne county. In the opinion of this court in that case, it was determined that the trial proceedings were legal and proper; and the conviction was affirmed. As to any circumstances which have intervened since the judgment of this court on appeal has become final, which questions solely concern the possible effect of the confinement upon the health of the accused, it is our opinion that such question is a proper matter to be addressed to the Chief Executive in which, if he sees fit, he may extend clemency under the power vested in him by the Constitution of this state.

For the reasons hereinabove stated, the petition for writ of habeas corpus is denied.

BAREFOOT, P. J., and DOYLE, J., concur.