(No. 39552.—

THE PEOPLE *ex rel.* Grover Cleveland Hogan, Appellant, *vs.* RICHARD J. OGILVIE, Sheriff, Appellee.

*Opinion filed May 23, 1966.—Rehearing denied September 21, 1966.*

RONALD SILVERMAN and JOAN CARMELL MILLER, both of Chicago, (JOEL J. SPRAYREGEN, of counsel,) for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and JOEL M. FLAUM, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

This is an appeal from an order of the circuit court of Cook County quashing a writ of *habeas corpus* filed on behalf of the relator, Grover Cleveland Hogan, who was being held by the sheriff of Cook County pursuant to a warrant of rendition issued by the Governor.

It appears that the relator Hogan, a Negro, was convicted of armed robbery in Alabama and thereafter escaped from an Alabama prison. The State of Alabama sought to extradite Hogan and duly obtained a warrant of rendition from the Governor of Illinois on June 14, 1965. A writ of *habeas corpus* was issued out of the circuit court of Cook County. The respondent sheriff produced the prisoner and relied on the warrant to justify his detention. Relator did not attack the sufficiency or propriety of the warrant, but moved "that the Court inquire into the prospective abuses that the petitioner may suffer at the hands of Alabama officials and grant leave to the petitioner to introduce evidence that the prospective abuses are so likely that the petitioner cannot * * * be remanded to the authority of officials of the State of Alabama."

This motion was denied and the writ was quashed. The prisoner was remanded to the custody of the sheriff for delivery to an agent of the State of Alabama. The sole issue on this appeal is whether or not the Illinois courts have the right and duty on a *habeas corpus* petition to hear evidence of an alleged prospective abuse of a prisoner's civil rights. Although the relator did not make a formal offer of proof he argues that he would be subjected, upon extradition, to unconstitutional treatment at the hands of Alabama prison and law enforcement officials without a practical opportunity to remedy such abuses in Alabama State or Federal courts. He makes no claim of any prior violation of his constitutional rights.

In *People ex rel. Gilbert* v. *Babb*, 415 Ill. 349, the relator

sought in a *habeas corpus* proceeding to challenge the constitutionality of a Massachusetts statute under which he was indicted. After an analysis of Federal cases the court refused to conduct an inquiry, stating at page 357: "From these decisions limiting the scope of the judicial inquiry into extradition proceedings, we believe it emerges clearly that this court may not properly, even under the supremacy clause, nullify the extradition agreement contained in the constitution by interposing our judgment on the merits of the constitutional attack made by appellant on the processes of Massachusetts. As previously noted, it is said that the extradition clause is a procedural provision which does not conflict with or affect any provision of the constitution or its amendments protecting the rights of individuals. The applicable decisions of the Federal courts, by which we are bound, show no tendency to extend the judicial inquiry into the extradition process beyond that concept. We shall not presume to exercise any authority over the courts or officials of Massachusetts by holding to the contrary. Accordingly, we hold that the trial court in this cause properly refused to hear and determine the constitutional objections to the indictment returned by Massachusetts authorities."

In *Sweeney* v. *Woodall*, 344 U.S. 86, 97 L. Ed. 114, the Supreme Court of the United States rejected a similar contention that *habeas corpus* was available to inquire into the potential cruel and inhuman treatment awaiting a fugitive in Alabama. The court stated at 344 U.S. 88-90:

"In the present case, as in the others, a fugitive from justice has asked the federal court in his asylum to pass upon the constitutionality of his incarceration in the demanding state, although the demanding state is not a party before the federal court and although he has made no attempt to raise such a question in the demanding state. The question is whether, under these circumstances, the district court should entertain the fugitive's application on its merits.

"Respondent makes no showing that relief is unavail-

able to him in the courts of Alabama. Had he never eluded the custody of his former jailers he certainly would be entitled to no privilege permitting him to attack Alabama's penal process by an action brought outside the territorial confines of Alabama in a forum where there would be no one to appear and answer for that State. * * *

"By resort to a form of 'self help,' respondent has changed his status from that of a prisoner of Alabama to that of a fugitive from Alabama. But this should not affect the authority of the Alabama courts to determine the validity of his imprisonment in Alabama. The scheme of interstate rendition, as set forth in both the Constitution and the statutes which Congress has enacted to implement the Constitution, contemplates the prompt return of a fugitive from justice as soon as the state from which he fled demands him; these provisions do not contemplate an appearance by Alabama in respondent's asylum to defend against the claimed abuses of its prison system. Considerations fundamental to our federal system require that the prisoner test the claimed unconstitutionality of his treatment by Alabama in the courts of that State."

The precise question before us was considered in *Johnson* v. *Matthews,* 182 F.2d 677, 680-681, where the court concluded:

"The basic premise of the Appellant's position is that he could not get fair treatment in the courts of Georgia, either state or federal. Every argument in support of power in the District of Columbia court to consider and determine whether Appellant should be released because of anticipated ill-treatment by executive officers of Georgia comes in the final analysis to the essential proposition that Appellant's rights would not be protected by the courts of Georgia. Those courts are there. They are charged with the duty of protecting this prisoner and any other in custody in that state. If·they perform that duty, Appellant would be as adequately protected by their order as he would be by an

order of the court here; he would have no basis for applying to the court here.

"We are asked to assume that Appellant would not be protected by the courts in Georgia. We not only decline to make the assumption but we repudiate the suggestion that we make it. We will not impugn either the capacity or the integrity of the state courts of Georgia or of any other state. And even if we were to assume, upon the basis of this fugitive's allegations, that the state courts are impervious to his assertions, we would make no such assumption concerning the federal courts having jurisdiction in that state. Those courts of the United States are as capable and faithful as are the courts of this or any other jurisdiction. If that Court of Appeals errs, *certiorari* to the Supreme Court will lie.

"If we will not assume the non-availability of courts in Georgia, we are asked to permit petitioner to present evidence upon that non-availability and then to determine the question. There is an established procedure for the correction of error or dereliction on the part of every court in the country, and where constitutional rights are involved the Supreme Court of the United States stands watchman over every court, state or federal. It would be an act of unwarranted arrogance for us to ascribe to ourselves virtue superior to that of other courts and so to assert power to hear and determine the faithfulness to duty of a sister court occupying a place like ours in the federal system. We have not the slightest semblance of authority over such courts. We might differ with them in opinion, but to us the availability of the Georgia federal courts to protect Appellant is not 'merely a presumption'."

The relator urges that we reject the decision in *Johnson* v. *Matthews*, (D.C. cir.) 182 F.2d 677, and distinguish the *Sweeney* and *Gilbert* cases on the ground that they do not present a claim that judicial relief is unavailable in the demanding State. Relator concedes that we may presume the

availability of judicial relief in the demanding forum, but that this presumption ought to be a rebuttable one and open to judicial inquiry. We are aware that some courts have seen fit to indulge in such an inquiry. (*Commonwealth ex rel. Mattox* v. *Superintendent*, 152 Pa. Super. Ct. 167, 31 A. 2d 576; *Harper* v. *Wall*, (D. Ct., N.J.) 85 F. Supp. 783; *Ex parte Marshall*, (D. Ct., N.J.) 85 F. Supp. 771.) However, we are not convinced of the wisdom of these decisions. It is especially inappropriate in this case, where the relator's attack is upon the entire Federal and State judiciary in Alabama, for this court to sit in judgment and determine that other courts will refuse to fulfill their constitutional functions and obligations in the future.

After a careful consideration of relator's arguments we adhere to the rationale of the *Gilbert, Sweeney* and *Johnson* cases and therefore hold that the trial court was correct in quashing the writ of *habeas corpus* and remanding the relator to the custody of the sheriff. To hold otherwise would permit fugitives in this State to use the judiciary of Illinois as a supervisory agency over the Federal and State judicial systems in the other 49 States. Under our Federal system this would be grossly improper.

The judgment of the circuit court of Cook County is therefore affirmed.

*Judgment affirmed.*