**Mark WICKHAM, Plaintiff and Appellant,**

v.

**George FISHER, Weber County Sheriff, Defendant and Respondent.**

**No. 16322.**

Supreme Court of Utah.

April 22, 1981.

---

James R. Hasenyagen, Ogden, for plaintiff and appellant.

David L. Wilkinson, Craig L. Barlow, Salt Lake City, Robert Newey, Ogden, for defendant and respondent.

STEWART, Justice:

Petitioner Mark Wickham was a pretrial detainee at the Weber County jail at the time this case was at issue in the trial court. He attacked the conditions of confinement at the jail as being in violation of the due process clause of the Fourteenth Amendment and the cruel and unusual punishment prohibition of the Eighth Amendment of the United States Constitution. The District Court for Weber County granted partial relief in response to Wickham's petition for a writ of habeas corpus, and he appeals. Wickham contends that the relief granted by the district court is insufficient and requests this Court to order that "the place and conditions for confinement of pretrial detainees in the Weber County Jail facility be brought into alignment with constitutionally mandated minimum standards . . . ."

On October 26, 1978, eight pretrial detainees incarcerated on the twelfth floor of the Weber County jail filed a pro se petition for a writ of habeas corpus challenging the conditions and place of their confinement. The district court appointed counsel to rep-

resent petitioners, and an amended petition was filed on behalf of the original petitioners. At the time of the hearing, only one of the originally named petitioners, Mark Wickham, remained in pretrial detention, and the claims of the other original petitioners were dismissed.

A hearing was held on the writ, and, after personally touring the jail, talking with some of the prisoners, and reviewing the records of the detainees, the Honorable John F. Wahlquist filed a comprehensive memorandum decision describing the conditions of that portion of the jail used for pretrial detainees. Findings of fact, conclusions of law, and an order based thereon were subsequently filed.

The trial court found the following facts, which are undisputed by the defendant. The pretrial detainment section of the jail involved in this case is divided into cells, used only for sleeping, and a day room. There are no facilities for exercise. When the day room area is filled to capacity, there is an average of 12.1 square feet of space per detainee. The court stated that:

> the square footage allowable for these detainees on a current basis would fall below that set forth in all correctional literature. Undoubtedly it would not be tolerated in a Federal Court contest if the confinement was for a long period of time.

And in its conclusions of law, the Court stated:

> By federal correctional standards and federal court decisions which are chiefly concerned with long term confinements whether it be for prisoners that are sentenced for felonies or prisoners who have to wait a number of months for trial, there is no doubt that the present confinement of detainees in the Weber County Jail would be considered as constitutionally cruel and inhumane if the detainees were so held for a long period . . . . The Weber County Jail is inadequate in this respect and therefore severely overcrowded.

The trial court also found that there was no possibility of sun rays ever entering the day room; that there was no interior lighting in the cells or day room, making reading almost impossible, although books were provided for the inmates; that it is impossible to provide "steady comfortable temperature" in the jail and that the temperature fluctuates between "very hot and very cold within the same 24 hour period"; that the condition of the portholes in the wall of the day room used for visitation "would tend to discourage visitations except under an extreme emotional need or necessity to exchange messages"; that detainees, while given reasonable allowances for stationery and envelopes, must either purchase their own stamps or trade their food to other detainees to acquire them; and that there is "no access for an ordinary exercise space, fresh air, or sunlight." Although detainees may do sit-ups or push-ups in the day room, most exercise consists of "stretching, leaning on walls, or walking around for not more than one or two steps at a time."

At the hearing, the chief corrections officer at the jail testified that inmates were not given toothbrushes or toothpaste because they could clean their teeth with salt, and that they could not receive toothpaste from visitors because of the danger of contraband being hidden in the tubes. Also introduced in evidence at the hearing was a copy of a report on the jail's eleventh floor, identical to the twelfth floor, from the Weber County Health Director. The report stated that "the present conditions [in the jail] are completely unhuman. The conditions are also very unhealthy. The S.P.C.A. [Society for the Prevention of Cruelty to Animals] would not permit such conditions for animals." Although some changes suggested by the report had been made, the basic conditions appear to have remained unchanged. The trial court concluded that "there is no doubt that the present confinement of detainees in the Weber County jail would be considered as constitutionally cruel and inhuman if the detainees were held for a long period." Because they were not held for a long time and there were no funds available to correct the situation, the court entered an order instituting procedures to

shorten pretrial confinement. Based on its findings, the district court ordered:

1. Each week the jailers must supply the court concerned, whether district, circuit, or justice of the peace, with the names of all pretrial detainees. After thirty days of confinement, a detainee shall be considered to have made a motion for release, and he shall be brought to court to determine "whether there is any possible way at that time to lessen the ordeal of his confinement"; court administrators are required to give scheduling priority to criminal cases consistent with the State statute.

2. The county was invited to propose an improved form of visitation, although contact visitation was not ordered.

3. It was suggested that the county contact the state welfare department to see if it could procure toothbrushes and other personal hygiene items for the detainees.

Plaintiff Mark Wickham appealed from this order contending that the overcrowding in the jail, lack of contact visitation, and lack of recreational and exercise opportunities violated his constitutional rights, including the right to be free from cruel and unusual punishment. The plaintiff also contends that the jail's refusal to provide him with stamps is a violation of his constitutional right of access to the courts, and that the housing of pretrial detainees with sentenced inmates is in direct violation of § 17–22–5, Utah Code Ann. (1953), as amended.[1]

■ Preliminarily, defendants submit that appellant has no standing to sue since he is no longer a pretrial detainee. We disagree. The situation in this case is such that the issue, involving constitutional considerations, cannot be raised and adjudicated, especially on appeal, by an inmate subjected to the conditions complained of here. The length of time during which a pretrial detainee is subjected to the conditions set

forth above is between 30 and 90 days. At the end of that time, a detainee is tried and either discharged or sentenced to serve prison time in an area which provides living conditions that are far less oppressive, and it is therefore not possible to adjudicate the legality of the conditions complained of during the period of detention. We are thus presented with a classic example of a situation "capable of repetition, yet evading review." *Southern Pacific Terminal Co. v. Interstate Commerce Commission*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). Even though plaintiff in this case has moved beyond the pretrial stage, the conditions at the Weber County jail giving rise to constitutional issues remain, and clearly there is a strong public interest in having the legality of the conditions settled. See *Carroll v. Commissioners of Princess Anne*, 393 U.S. 175, 178–79, 89 S.Ct. 347, 350, 21 L.Ed.2d 325 (1968); *United States v. W. T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953).

■ The principles that determine the justiciability of the instant case are the well-established rules which permit a court to litigate an issue which, although technically moot as to a particular litigant at the time of appeal, is of wide concern, affects the public interest, is likely to recur in a similar manner, and, because of the brief time any one person is affected, would otherwise likely escape judicial review, *Carroll v. Commissioners of Princess Anne, supra; United States v. W. T. Grant Co., supra; People v. Labrenz*, 411 Ill. 618, 104 N.E.2d 769, *cert. denied*, 344 U.S. 824, 73 S.Ct. 24, 97 L.Ed. 642 (1952); *Dunn v. Dunn*, 96 Ind.App. 620, 185 N.E. 334 (1933); *Close v. Southern Maryland Agricultural Assoc.*, 134 Md. 629, 108 A. 209 (1919); *O'Laughlin v. Carlson*, 30 N.D. 213, 152 N.W. 675 (1915). The law provides no exemption from judicial scrutiny of unlawful acts which are likely to be repeated because they do not

---

1. That section provides:

   Persons committed on criminal process and detained for trial, persons convicted and under sentence, and persons committed upon civil process, must not be kept or put in the same room, nor shall male and female prisoners, except husband and wife, be kept or put in the same room. Females shall be under the supervision of a suitable matron to be appointed by the sheriff.

fall within the usual principles of standing and justiciability. *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Southern Pacific Terminal Co. v. Interstate Commerce Commission, supra.*

■ Generally, an actual controversy must exist at the stage of appellate review, but an exception to that rule allows a technically mooted controversy to be adjudicated in certain circumstances. In *Roe v. Wade, supra,* the Court stated:

> But when, as here, pregnancy is a significant fact in the litigation, the normal 266-day human gestation period is so short that the pregnancy will come to term before the usual appellate process is complete. If that termination makes a case moot, pregnancy litigation seldom will survive much beyond the trial stage, and appellate review will be effectively denied. Our law should not be that rigid. [*Id.* at 125, 93 S.Ct. at 713.]

The time period in this case during which any particular detainee would be subject to the conditions complained of is less than in *Roe.* The fact that present and future detainees will suffer conditions at the jail for a period of time insufficient for a case to receive appellate review during the imposition of such conditions reflects a continuing and recurring controversy sufficient to invoke the jurisdiction of this Court. *Moore v. Ogilvie,* 394 U.S. 814, 816, 89 S.Ct. 1493, 1494, 23 L.Ed.2d 1 (1969).

Respondent also contends that a writ of habeas corpus is an inappropriate remedy for attacking the conditions of confinement as opposed to the legality of confinement. This Court has denied remedies on petitions for a writ of habeas corpus attacking conditions of confinement in *Hughes v. Turner,* 14 Utah 2d 128, 378 P.2d 888 (1963); *Smith v. Turner,* 12 Utah 2d 66, 362 P.2d 581 (1961); and *Chapman v. Graham,* 2 Utah 2d 156, 270 P.2d 821 (1954), but the Court in these cases clearly recognized that the writ is an appropriate means for attacking abuses within the prison system which constitute a denial of constitutional rights.

This view is supported by a number of opinions from other jurisdictions. In *Council v. Clemmer,* 83 U.S.App.D.C. 42, 165 F.2d 249, 250 (1947), the court stated:

> * * * the limitations upon the remedy afforded by habeas corpus should be flexible and readily available to prevent manifest injustice, for, as Mr. Justice Black has expressed it, the principles judicially established for the delimitation of habeas corpus action "must be construed and applied so as to preserve—not destroy—constitutional safeguards of human life and liberty." *Johnson v. Zerbst,* 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461....

■ To accomplish that end, it is sufficient that the remedy be directed toward abolishing an unlawful condition of confinement, as opposed to release of the prisoner. As stated in *Cravatt v. Thomas,* 399 F.Supp. 956, 962–63 (W.D.Wis.1975):

> Until relatively recently "the courts have typically claimed that habeas is not an appropriate vehicle for the review of conditions of confinement established by prison management," apparently on the theory that habeas corpus was available only in cases where issuance of the writ would result in an immediate discharge of the petitioner from every aspect of physical imprisonment. *McNally v. Hill,* 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238 (1934). That rule had gradually been eroded, and in *Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), the Court appeared to agree that "... a custody, one component of which is ... an unlawful regulation, is an invalid custody," amenable to challenge by means of a habeas corpus petition ... although the issuance of a writ of habeas corpus in such a case would result only in the elimination of that specific condition of physical imprisonment and not in his release from every aspect of physical imprisonment. [Footnotes omitted.]

■ Although defendant contends that the Weber County jail presents no constitutional deprivations requiring judicial intervention, plaintiff alleges, and case law supports the contention, that the inadequate

space and other conditions inimical to the maintenance of the health of the detainees raise issues of constitutional dimensions. *Nadeau v. Helgemoe,* 423 F.Supp. 1250 (D.N.H.1976); *Detainees of the Brooklyn House of Detention for Men v. Malcolm,* 520 F.2d 392 (2nd Cir. 1975); *Taylor v. Sterrett,* 344 F.Supp. 411 (N.D.Tex.1972).

■ Problems concerning or arising out of internal prison administration will be addressed by the courts only with reluctance and upon a showing of a violation of important rights. Prison administrators are responsible for the day-to-day management of prisons. But a jail door does not close off all protections of the United States or the Utah Constitutions. Prisons and jails are not, of course, required to provide the comforts and amenities available to one on the outside world; but neither is incarceration a justification for dissolving the protection of the Eighth Amendment of the United States Constitution which prevents the inhuman treatment of prisoners, or the due process clauses of the state and federal constitutions which prevent punishment of a detainee prior to an adjudication of guilt. See *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Detainees do not, of course, possess the full rights of personal liberty enjoyed by persons not charged with a crime, but the conditions of confinement are not without some constitutional limitations and are limited to measures necessary to assure their appearance for trial and to maintain jail discipline and security. See *Ahrens v. Thomas,* 434 F.Supp. 873, 897 (W.D.Mo.1977), *modified,* 570 F.2d 286 (8th Cir. 1978); *Rhem v. Malcolm,* 371 F.Supp. 594, 622 (S.D.N.Y.1974), *aff'd and remanded,* 507 F.2d 333 (2nd Cir. 1974).

■ Confinement of pretrial detainees in an overcrowded area described as the maximum security cells of the Weber County jail raises serious constitutional issues as to a detainee's right of due process to be free from unduly harsh and rigorous treatment. United States Constitution, Fourteenth Amendment; Utah Constitution, Article I, § 7. See generally *Rhem v. Malcom, supra; Brenneman v. Madigan,* 343 F.Supp. 128 (N.D.Cal.1972); *Hamilton v. Love,* 328 F.Supp. 1182 (E.D.Ark.1971); *Jones v. Wittenburg,* 323 F.Supp. 93 (N.D.Ohio 1971). We note also that some lower federal courts have held that pretrial detainees have a constitutional right to contact visitation in appropriate circumstances, *Rhem v. Malcolm, supra; Miller v. Carson,* 563 F.2d 741 (5th Cir. 1977), and that denial of that right is constitutionally impermissible without a determination that an individual presents a peculiar security risk. *Miller v. Carson, supra. Detainees of the Brooklyn House of Detention for Men v. Malcom, supra; Rhem v. Malcolm, supra; Ahrens v. Thomas, supra; O'Bryan v. County of Saginaw,* 437 F.Supp. 582 (E.D.Mich.1977); *Berch v. Stahl,* 373 F.Supp. 412 (W.D.N.C.1974). The noncontact visitation program at the Weber County jail for pretrial detainees seems to be imposed in part because of the construction of the twelfth-floor facilities. The failure to provide reasonable opportunity for exercise also imposes harsh conditions of confinement. *Detainees of the Brooklyn House of Detention for Men v. Malcolm, supra; Rhem v. Malcolm, supra.* Indeed, such conditions may well increase discipline problems and lead to abuse of prisoners by other prisoners. But again, it appears that the most basic cause is the outmoded nature of the facilities.

Obviously, the most difficult problem in this case is the fashioning of an appropriate remedy because of the physical limitations of the facility and because it is the county government which, because of its power over the purse strings, must be involved in a long-term solution. We are aware that Weber County is in the process of building a new jail which should remedy the situation, although continued use of the present facilities might well continue some of the improper conditions. We are also aware that the trial judge in this case has made an earnest and thoughtful effort to fashion a remedy to alleviate the present conditions and, also, that the county government has taken action to provide better facilities.

Nevertheless, realizing the constraints of the existing circumstances, we believe that every additional, practicable effort should be made to remedy further the existing conditions. To that end the procedures heretofore ordered by the trial court should be continued, and in addition, the following procedures and measures should be adopted if at all practicable:

1. Contact visitation in appropriate cases (possibly on the ninth floor);

2. Some opportunity provided for detainees to exercise;

3. Better regulation of the temperature;

4. Full utilization of the day room and the space in the sleeping cells during the day, if consistent with the safety of the prisoners and the security of the facility;

5. Provision for better interior lighting.

In addition, the county should make reasonable provisions for postage stamps for the purpose of enabling prisoners to communicate with their counsel and the courts. Without stamps, a detainee is removed one step from meaningful access to the courts and counsel. *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977).

Finally, the Weber County Sheriff should be directed to make every possible effort to separate pretrial detainees from prisoners who are presently jailed for a conviction by, for example, placing the convicts on the eleventh floor, making better use of halfway houses, or whatever other means would serve to bring the county into compliance with state law.

Hopefully, the construction of the new jail will alleviate some of the present difficulties. Further improvement of the present circumstances may well be fraught with practical difficulties of which we are not aware, but we believe that a further good faith effort should be made. Therefore, a further hearing should be held to determine what additional steps, if any, can be taken to alleviate the problems which presently exist.

We remand for further proceedings in accordance with this opinion.

MAUGHAN, C. J., and HALL, J., concur.

CROCKETT, J., concurs in result.*

WILKINS, J., heard the arguments but resigned before the opinion was filed.

---

* CROCKETT, J., acted on this case before his retirement.