**Richard GARDNER et al., Plaintiffs,**

v.

**F. Warren BENTON et al., Defendants.**

**No. 76–130–C.**

United States District Court,
E. D. Oklahoma.

Aug. 29, 1977.

Richard Gardner, pro se.

Kay Karen Kennedy, Asst. Atty. Gen., Oklahoma City, Okl., for defendants.

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

MORRIS, Chief Judge.

This action is before the court on defendants' motion for summary judgment. Defendants have submitted a brief and an affidavit with their motion. Plaintiffs have responded to the motion and submitted a brief in support of their position.

Plaintiffs are inmates and former inmates of the Oklahoma State Penitentiary at McAlester, Oklahoma. They bring this action pursuant to 42 U.S.C. § 1983 seeking declaratory and injunctive relief and damages for alleged violations of their constitutional rights. In their complaint, plaintiffs allege the following factual circumstances: on February 3, 1976, plaintiffs appeared individually before the prison classification committee where each plaintiff was advised of a change in his classification from medium to maximum custody. As a result of the change in classification, plaintiffs were transferred to the prison's east cellhouse.

The complaint alleges numerous constitutional deprivations arising out of the above facts, which can be summarized in five basic allegations. First, plaintiffs Gardner and Robinson allege that personal property was confiscated from them during their appearances before the committee. Secondly, plaintiffs allege that defendants have denied them adequate medical care. Thirdly, plaintiffs contend that as a result of their transfer to the east cellhouse they lost privileges available to the general prison population. Fourth, plaintiffs claim their confinement in the east cellhouse is unconstitutional, since their reclassification hearing allegedly failed to comport with due process. Finally, plaintiffs allege that defendant Crisp has issued unconstitutional policies, condoned by defendant Benton.

*I. Alleged Confiscation of Plaintiffs Gardner and Robinson's Personal Property.*

Plaintiffs Gardner and Robinson contend in paragraph 24 of the complaint that defendant Tyler confiscated their wristwatches during their reclassification hearings. By an order filed July 26, 1977, this court granted plaintiff Gardner's request to withdraw from this lawsuit and dismissed the action with prejudice as to plaintiff Gardner. Moreover, in September, 1976, plaintiff Robinson was ordered by this court to respond within 20 days to interrogatories submitted to him by defendants concerning the alleged confiscation of his watch. In response to a letter from Warden Crisp stating that plaintiff Robinson has been

paroled from the institution, the court requested that its order be forwarded to this plaintiff. A letter from Warden Crisp dated October 5, 1976, indicates that all legal documents were forwarded to plaintiff Robinson; however, no response to the interrogatories or further pleadings by plaintiff Robinson have been received and during the one year period since his parole, plaintiff Robinson has failed to advise the court of his present address.

■ Rule 41(b) of the Federal Rules of Civil Procedure provides that an action may be dismissed for failure of the plaintiff to prosecute or comply with applicable rules or any order of the court. Under such circumstances, the court has inherent power to dismiss on its own initiative. *Link v. Wabash R. R.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *Shotkin v. Westinghouse Electric & Manufacturing Co.,* 169 F.2d 825 (10th Cir. 1948). *See also Food Basket, Inc. v. Albertson's, Inc.,* 416 F.2d 937 (10th Cir. 1969). The court finds that plaintiff Robinson has failed to act with diligence in the prosecution of his claims and has ignored the orders of the court. Accordingly, the action is dismissed as to plaintiff Robinson for failure to prosecute. Since the only allegations against defendants concerning confiscation of property are on behalf of plaintiffs Gardner and Robinson, neither of whom is still a party to this suit, summary judgment is hereby denied defendants on this claim.

## II. *Denial of Adequate Medical Care.*

Plaintiffs complain in paragraph 32 of their complaint that they are being denied adequate medical care. On an earlier motion for summary judgment by defendants this court entered an order on March 31, 1977 granting summary judgment on this claim as to all defendants except defendant Tyler and as to all plaintiffs except plaintiffs Gardner and Stott. As previously noted, plaintiff Gardner has subsequently withdrawn from this lawsuit.

## III. *Alleged Denial of Privileges During Confinement in East Cellhouse.*

Paragraphs 31, 33 and 34 of the complaint allege that plaintiffs, due to their confinement in the east cellhouse, are denied the following privileges which are available to the general prison population:

A. Plaintiffs' assigned jobs;

B. Statutory good time credits as afforded other inmates within the general population (minimum security) who maintain jobs;

C. Statutory work pay;

D. Trusty consideration;

E. Use of prison gym;

F. Right to be free from cruel and unusual punishment;

G. Right to be secure in his person;

H. Right to equal protection of the law in that other inmates of the Oklahoma State Penitentiary are able to participate in and attend any and all administrational sponsored activities;

I. Right to participate in an adequate medical program;

J. Right to be informed of all written rules and procedures of the Oklahoma State Penitentiary.

Plaintiffs contend that denial of these rights constitutes cruel and unusual punishment. In its order of March 31, 1977, this court granted defendants' motion for summary judgment on this claim, with the exception as to defendant Tyler noted in part two above.

## IV. *Alleged Denial of Due Process.*

In paragraphs 25, 26, 27, 29, 30 and 33 of the complaint, plaintiffs contend that the reclassification hearing accorded them did not comport with due process and that their confinement in the east cellhouse, with the attendant loss of privileges set out in paragraph 33, violates their fourteenth amendment rights. Specifically, plaintiffs allege that as a result of the change in their classification, they have been deprived of their assigned jobs, statutory good time credits, statutory work pay, trusty consideration, use of the prison gym, right to be free from cruel and unusual punishment,

right to be secure in their persons, right to participate in administrational sponsored activities, right to participate in an adequate medical program and the right to be informed of all prison written rules and procedures.

The fourteenth amendment prohibits any state from depriving a person of life, liberty or property without due process of law. The initial inquiry, therefore, is whether the transfer of plaintiffs to the east cellhouse infringed or implicated a "liberty" interest of plaintiffs within the meaning of the due process clause. Plaintiffs' allegations as to medical care and cruel and unusual punishment have been dealt with in sections two and three of this order. As to all other alleged deprivations set out above, with the exception of the alleged loss of good time credits, the court concludes that plaintiffs have suffered no grievous loss sufficient to invoke the procedural protections of the due process clause. *Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). In *Meachum,* the Supreme Court was confronted with the issue of

> whether the Due Process Clause of the Fourteenth Amendment entitles a state prisoner to a hearing when he is transferred to a prison the conditions of which are substantially less favorable to the prisoner, absent a state law or practice conditioning such transfers on proof of serious misconduct or the occurrence of other events. We hold that it does not. *Id.* at 216, 96 S.Ct. at 2534.

■ Plaintiffs' allegations that they are denied use of the prison gym, the right to participate in administration sponsored activities and the right to be informed of written prison procedures are not "grievous losses" sufficient to invoke due process requirements. "That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules." *Meachum v. Fano,* 427 U.S. 215, 225, 96 S.Ct. 2532, 2538 (1976). Likewise, denial of cer-

tain alleged benefits such as assigned jobs and trusty status are not sufficient to invoke fourteenth amendment procedures. *Marchesani v. McCune,* 531 F.2d 459 (10th Cir. 1976).

As long as the conditions or degree of confinement to which the prisoner is subjected are within the sentence imposed upon him and are not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight. The Clause does not require hearings in connection with transfers whether or not they are the result of the inmate's misbehavior or may be labeled as disciplinary or punitive. *Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976).

■ Moreover, plaintiffs' allegations that they have been deprived of their assigned jobs, statutory work pay, trusty consideration, use of prison gym, right to be free from cruel and unusual punishment, right to be secure in their person, right to equal protection of the laws, right to participate in an adequate medical program and right to be informed of all written rules and procedures of the Oklahoma State Penitentiary are merely conclusory. Broad conclusory assertions unsupported by specific factual allegations which implicate particular defendants are not sufficient to state a claim under the Civil Rights Act. *Forester v. California Adult Authority,* 510 F.2d 58 (8th Cir. 1975); *Ellingburg v. King,* 490 F.2d 1270 (8th Cir. 1974); *Curtis v. Everette,* 489 F.2d 516 (3rd Cir. 1973), *Cf. Lorraine v. United States,* 444 F.2d 1 (10th Cir. 1971) (case brought pursuant to 28 U.S.C. § 2255); *Martinez v. United States,* 344 F.2d 325 (10th Cir. 1965) (case brought pursuant to 28 U.S.C. § 2255).

The remaining issue for the court is whether plaintiffs were entitled to due process because, as a result of the transfer to the east cellhouse, they lost an opportunity to earn good-time credits. Summary judgment was denied with respect to this claim in the court's order of March 31, 1977. Since its March order, this court has had

the opportunity to re-examine the issue of good-time credits in light of *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) and *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976). Notwithstanding the cautious approach taken in its prior order, the court now concludes that plaintiffs' loss of the opportunity to earn good-time credits as a result of their confinement in the east cellhouse does not deprive them of a constitutionally protected right.

In *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) the Supreme Court held that due process was required as to Nebraska state prison inmates who face disciplinary proceedings in which they could lose good-time credits because the Court found that under Nebraska law inmates had a statutory right to good-time credits and that Nebraska law also provided that such credits could be forfeited or withheld only for serious misconduct. The Court said in *Wolff:*

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." *Cafeteria Workers v. McElroy,* 367 U.S. 886, 894 [, 81 S.Ct. 1743, 6 L.Ed.2d 1230] (1961). But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process

Clause to insure that the state-created right is not arbitrarily abrogated. *Id.* at 557, 94 S.Ct. at 2975.

The *Wolff* holding was clarified in *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), where the Court explained that "The liberty interest protected in *Wolff* had its roots in *state* law, and the minimum procedures appropriate under the circumstances were held required by the Due Process Clause 'to insure that the *state-created* right is not arbitrarily abrogated.'" *Id.* at 226, 96 S.Ct. at 2539 (emphasis added).

*Meachum* involved the question of whether Massachusetts prisoners who were transferred from a medium security to a maximum security prison had a right to due process. The Supreme Court held they did not because Massachusetts law created in the prisoners no right to be housed in any particular prison. The Court stated:

> Here, Massachusetts law conferred no right on the prisoner to remain in the prison to which he was initially assigned, defeasible only upon proof of specific acts of misconduct. Insofar as we are advised, transfers between Massachusetts prisons are not conditioned upon the occurrence of specified events. On the contrary, transfer in a wide variety of circumstances is vested in prison officials. The predicate for invoking the protection of the Fourteenth Amendment as construed and applied in *Wolff v. McDonnell* is totally nonexistent in this case. Id. at 226–27, 96 S.Ct. at 2539.

Again, in *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976), the Court further clarified its position, explaining:

> We held in *Meachum v. Fano,* that no Due Process Clause liberty interest of a duly convicted prison inmate is infringed when he is transferred from one prison to another within the State, whether with or without a hearing, absent some right or justifiable expectation rooted in state law that he will not be transferred except

for misbehavior or upon the occurrence of other specified events. *Id.* at 242, 96 S.Ct. at 2547.

In *Montanye,* the Court found a New York state prisoner's transfer from one prison to another did not require a hearing, whether or not such transfer resulted from the prisoner's misbehavior or was disciplinary or punitive, where under New York law the prisoner had no right to remain at any particular prison and no justifiable expectation that he would not be transferred unless found guilty of misconduct.

In this case, therefore, the test of whether due process was required in connection with the plaintiffs' transfers is whether state law created in plaintiffs some right or justifiable expectation of receiving the good-time credits which they claim they cannot acquire so long as they remain confined in the east cellhouse. The court particularly notes in this regard that plaintiffs have not alleged that they have lost, as a result of the transfer, any good-time credits which they previously earned. They merely allege that they are being denied the opportunity to work and earn any good-time credits in addition to those earned prior to the transfer. Plaintiffs allege no law and no facts which suggest the basis for any reasonable expectation on their part of a right to earn good-time credits by working. Furthermore, no such right is guaranteed by state statute. 57 Okl.Stat. § 138 (Supp. 1973), as in effect at the time of plaintiffs' transfer, provided:

§ 138. Credits for good conduct, blood donations, training program participation, etc.—A. Every convict who shall have no infractions of the rules and regulations of the prison or laws of the state recorded against him shall be allowed for his term a deduction of two (2) months in each of the first two (2) years; four (4) months in each of the next two (2) years; five (5) months in each of the remaining years of said term, and prorated for any part of the year where the sentence is for more or less than a year. The mode of reckoning credits shall be as shown in the following table:

SCHEDULE OF CREDITS

| Number of years of sentence | Good Time Granted | Total Good Time Made | Time to be Served if full Time is made |
|---|---|---|---|
| 1st year | 2 months | 2 months | 10 months |
| 2nd year | 2 months | 4 months | 1 year, 8 months |
| 3rd year | 4 months | 8 months | 2 years, 4 months |
| 4th year | 4 months | 1 year | 3 years |
| 5th year | 5 months | 1 year, 5 months | 3 years, 7 months |

and so on, through as many years as may be the term of the sentence. Provided, however, that no convict shall be entitled to deduction for good time, as herein provided, in the event he has been guilty of misconduct or violation of the prison rules and regulations, unless relieved therefrom by the warden or superintendent, under rules and regulations established by the Board of Corrections. Provided further, when a maximum and minimum term of imprisonment is imposed, this section shall apply only to the maximum term.

B. In addition to the deduction above provided:

1. Every inmate shall be entitled to a deduction from his sentence of two (2) days for every six (6) days' work performed by him.

2. Every inmate involved in a work program, the Prison Industry Training Program, or any treatment or personal improvement program approved by the Department shall be entitled to a deduction of twenty (20) days for each pint of blood he donates to the American Red Cross or to any agency or hospital approved for such purpose by the Department of Corrections. Provided, however, no inmate may receive such blood time credit for more than four (4) donations in any twelve-month period. Provided further, that under no circumstances

may such blood time credit be revoked by the Department of Corrections or any of its delegated authorities.

3. Every inmate who participates in the Department of Corrections' Prison Industry Training Program shall be allowed training credits according to the following schedule:

a. Inmates assigned to positions in the Prison Industry Training Program with no prior training shall be classified as apprentices. This classification shall be for a period of no less than three (3) months and inmates shall be allowed three (3) days' credit for each month served in this classification. Upon expiration of the three-month period, an inmate may elect to be reviewed for work proficiency. Upon successful demonstration of work skill, an inmate shall be granted the classification of journeyman.

b. An inmate classified as journeyman shall serve in this capacity for no less than four (4) months and shall be granted four (4) days' work credit each month under this classification. Upon successful demonstration of skill, an inmate shall be granted the classification of craftsman.

c. An inmate classified as a craftsman shall be granted work credit of five (5) days for each month served in this capacity. An inmate must be able to teach the craft and supervise the work of other inmates in order to obtain this classification.

d. In the event an inmate has had prior training or experience, the Department of Corrections may exempt said inmate from any initial phases of the training. Such inmate shall then serve the time period and receive the credits of each phase from which he was exempted and the phase time period he has entered before achieving a higher classification.

4. Every inmate who participates in any work program other than that outlined in Section 1, subsection B 3, or any treatment or personal improvement program approved by the Department of Corrections shall be allowed an additional two (2) days each for the first two (2) months he participates, three (3) days each for the next three (3) months and five (5) days for each month thereafter, provided he is making satisfactory advancement in the program.

5. No inmate may accumulate more than five (5) days total incentive good time per month for his participation under Section 1, subsection B 3 and Section 1, subsection B 4.

C. Inmates who are granted medical leaves for treatment which cannot be furnished at the penal institution where incarcerated shall be allowed the time spent on medical leave as time served. All inmates shall be allowed as a deduction from their term of imprisonment the jail term, if any, served prior to being transported to the penitentiary pursuant to the judgment and sentence by which the inmate is committed.

Section 138 was amended on June 8, 1976. The amended section, as it took effect on September 8, 1976, provides:

§ 138. Credits for good conduct, blood donations, training program participation, etc.—

A. Every inmate of a state correctional institution who engages in work, attends school or participates in a vocational training program, approved or provided by the Department, shall have one (1) day deducted from his sentence for each day that he engages in any such activity. Earned credits may be subtracted from the total accumulated by an inmate, upon recommendation of the institution disciplinary committee, following due process, and approved by the warden or superintendent. Provided that lost credits may be restored by the warden or superintendent upon approval by the classification committee. Provided further, when a maximum and minimum term of imprisonment is imposed, this section shall apply only to the maximum term. No

deductions shall be credited to any inmate serving a sentence of life imprisonment, however, a complete record of said inmate's participation in work, school, vocational training or other approved program shall be maintained by the Department for consideration by the paroling authority.

B. In addition to the deduction above provided, every inmate involved in any such activities or any treatment or personal improvement program approved by the Department shall be entitled to a deduction of twenty (20) days for each pint of blood he donates to the American Red Cross or to any agency or hospital approved for such purposes by the Department of Corrections. Provided, however, no inmate may receive such blood time credit for more than four (4) donations in any twelve month period. Provided further, that under no circumstances may such blood time credit be revoked by the Department of Corrections or any of its delegated authorities.

C. Inmates who are granted medical leaves for treatment which cannot be furnished at the penal institution where incarcerated shall be allowed the time spent on medical leave as time served. *Any inmate* classified by the Department of Corrections as physically or mentally disabled for work or *placed into administrative segregation, by the institutional administration, may be allowed up to one (1) day credit off his sentence for good behavior for each day served with a maximum credit of two hundred sixty (260) days per year.* All inmates shall be allowed as a deduction from their term of imprisonment the jail term, if any, served prior to being transported to the penitentiary pursuant to the judgment and sentence by which the inmate is committed.

D. The accumulated time of every inmate shall be tallied each month and filed by the institution where the sentence is being served. A copy of this record shall be sent to the Department on a quarterly basis and a copy shall be provided the inmate. 57 Okla.Stat. § 138 (Supp.1976) (emphasis added).

The Oklahoma statute does not guarantee that an inmate will receive work-time credits; it does not promise that he will be provided an opportunity to work. It simply provides that if he does work he will receive work-time credits. At an institution with a large inmate population there are jobs for only a limited number of prisoners. Therefore, it cannot be said that Oklahoma law creates any right to work-time credits which amounts to a liberty or property interest. Plaintiffs here contend only that since being transferred to the east cellhouse in February, 1976, they have been denied good-time credits afforded members of the general prison population and in that regard the uncontroverted affidavit submitted on behalf of defendants by Deputy Warden Hess of the Oklahoma State Penitentiary shows that no good-time credit has been lost as a result of the transfer.

■ The court accordingly concludes that plaintiffs' loss of the opportunity to earn work-time credits does not deprive them of a constitutionally protected right. The court again notes that no allegation is made by plaintiffs that good-time credits earned prior to February, 1976, were forfeited by them on account of their reclassification and that plaintiffs have submitted no counter affidavit to controvert defendants' affidavit in this regard. On a motion for summary judgment,

> If the moving party presents credible evidence that would entitle him to a directed verdict if not controverted at trial, this evidence must be accepted as true on a motion for summary judgment when the party opposing the motion does not offer counter-affidavits or other evidentiary material supporting his contention that an issue of fact remains, or does not show a good reason, in accordance with Rule 56(f), why he is unable to present facts justifying his opposition to the motion. 10 C. Wright and A. Miller, Federal Practice and Procedure § 2727, at 533–34 (1973).

Since September 8, 1976, plaintiffs are eligible to earn good-time credits pursuant to

the most recent amendment to the statute. See 57 Okla.Stat. § 138(c) (Supp.1976).

Accordingly, the court concludes that the defendants are entitled to summary judgment on the due process claim since plaintiffs have not been deprived of any federal constitutional right. Summary judgment is granted in favor of defendants and against plaintiffs on this claim. Rule 56 Federal Rules of Civil Procedure.

### V. *Alleged Unconstitutional Policies Issued by Crisp.*

In paragraph 35 of their complaint, plaintiffs contend that defendant Crisp "has issued unconstitutional policies and procedural menorandums (sic)" which are "condoned" by defendant Benton. No factual allegations are made in support of this conclusory allegation. Broad conclusory assertions unsupported by specific factual allegations which implicate particular defendants are not sufficient to state a claim under the Civil Rights Act. *Forester v. California Adult Authority,* 510 F.2d 58 (8th Cir. 1975); *Ellingburg v. King,* 490 F.2d 1270 (8th Cir. 1974); *Curtis v. Everette,* 489 F.2d 516 (3rd Cir. 1973, *Cf. Lorraine v. United States,* 444 F.2d 1 (10th Cir. 1971) (case brought pursuant to 28 U.S.C. § 2255; *Martinez v. United States,* 344 F.2d 325 (10th Cir. 1965) (case brought pursuant to 28 U.S.C. § 2255). Accordingly, dismissal is granted in favor of defendants on this claim. Rule 12(b)(6).

The court concludes, therefore, that defendants are entitled to summary judgment on all claims except inadequate medical care by plaintiff Stott against defendant Tyler. Accordingly, summary judgment is granted in favor of all defendants except defendant Tyler and against all plaintiffs except plaintiff Stott and as to all claims except that of inadequate medical care by plaintiff Stott against defendant Tyler.