**Billy Ray DOLPH, Plaintiff,**

v.

**Richard A. CRISP, Warden and Jack Brannon, Assoc. Dept. Warden, Defendants.**

No. 77–245–C.

United States District Court, E. D. Oklahoma.

March 29, 1978.

**1180**

Billy Ray Dolph, pro se.

Midge Martin McGee, Asst. Atty. Gen., Oklahoma City, Okl., for defendants.

### ORDER ON MOTIONS FOR SUMMARY JUDGMENT

MORRIS, Chief Judge.

This action is before the court on motions by plaintiff and defendants for summary judgment. The parties have filed briefs, and plaintiff has submitted an affidavit, in support of their respective positions.

This is a civil rights action brought under 42 U.S.C. § 1983 by an inmate at the Oklahoma State Penitentiary for the alleged violation of his constitutional rights under the fifth, eighth and fourteenth amendments. Specifically, plaintiff alleges that defendants wrote and caused to be placed in his classification file two letters containing false information. The first letter, dated March 1, 1977, is from Deputy Associate Warden Brannon, a defendant in this lawsuit, to Warden Richard Crisp, the other defendant. In the letter, defendant Brannon requests that plaintiff not be granted trusty status because of his involvement in drug trafficking at the prison. The second letter complained of is written by defendant Crisp to John Grider, Deputy Director of Institutions for the Oklahoma Department of Corrections. Defendant Crisp states in the letter that plaintiff has an extensive history at the prison of dealing in narcotics and recommends that he not be assigned to the trusty unit.

Plaintiff asserts that the allegations made in the letters are untrue and unfounded. He argues that he was given no hearing or other opportunity to rebut the drug charges and alleges that he has no record of drug violations either before or during his confinement. He alleges that as a result of the letters written by the defendants and placed in his file, his trusty status was revoked. He also claims that, as a result of the revocation of his trusty status and reassignment as "medium security," he has lost rights and privileges enjoyed by inmates with good conduct records. Finally, he contends that the letters, as part of the file reviewed by the parole board, will adversely affect his chances for parole.

The court is in agreement with the parties that this dispute should be resolved on motions for summary judgment. Defendants do not deny writing the letters in question, which are part of the record before the court, nor do they deny that the letters have been made part of plaintiff's permanent file. Furthermore, they agree,

through answers provided to plaintiff's interrogatories, that plaintiff has not been convicted of any drug violations while confined at the prison. Defendants argue, however, that they are entitled to summary judgment because plaintiff has failed to show any deprivation of a constitutional right.

It should be noted at the outset that although plaintiff alleges violations of his fifth, eighth and fourteenth amendment rights, no factual allegations have been set forth which, in the court's view, establish a fifth or eighth amendment claim. None of the acts committed by defendants constitute cruel and unusual punishment, as defined by this circuit, under the eighth amendment. *See Bethea v. Crouse*, 417 F.2d 504 (10th Cir. 1969). Moreover, plaintiff has not shown any factual basis for his fifth amendment claims. As his contentions of fifth and eighth amendment violations are without merit, plaintiff's claim must be judged solely against the fourteenth amendment; the issue presented for the court is whether plaintiff has been deprived of a constitutional right by not being afforded a hearing or other due process guarantees before the letters complained of were placed in his file. Defendants contend that the due process clause does not require a hearing under the circumstances alleged in the complaint, citing *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976).

The court first considers plaintiff's claim that he was entitled to due process because, as a result of the letters, he lost privileges and rights enjoyed by inmates with good conduct records. A careful review of the complaint and other pleadings reveals, however, that nowhere does plaintiff set out what rights and privileges he has lost. In the absence of such specificity, the court cannot assume that plaintiff has suffered the loss of a liberty or property interest sufficient to invoke the procedural safeguards of *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). This is especially true in view of the Supreme Court's statement in *Wolff* that

"[w]e do not suggest . . . that the procedures required . . . for the deprivation of good time would also be required for the imposition of lesser penalties such as the loss of privileges." *Id.* at 572 n. 19, 94 S.Ct. at 2982. Because plaintiff has failed to enumerate the rights and privileges accorded inmates with good conduct records which he has lost as a result of defendants' acts, the court cannot say that he has suffered a loss in this regard sufficient to trigger the due process requirements of *Wolff*. Accordingly, insofar as this claim is concerned, summary judgment for defendants is appropriate under Rule 56, F.R.C.P.

Plaintiff's second claim is that as a result of the letters written by defendants being placed in his file his chances for parole will be adversely affected. Specifically plaintiff argues that because the letters are part of his classification file, which is reviewed by the parole board, the letters will be considered by the board and will have a negative impact on his parole consideration. This claim is without merit. Plaintiff does not allege that he has previously appeared before the parole board and has been denied parole because of the letters in his file; he asserts instead that when, and if, he so appears in the future his chances will be diminished. This claim is purely speculative on plaintiff's part and fails to satisfy the "injury in fact" requirement of standing to litigate. Standing to sue is an element of the Article III requirement of the United States Constitution that there be a "case or controversy," and therefore acts as a limitation on the subject matter jurisdiction of the federal courts. In the absence of any allegation by plaintiff that he has been denied parole in the past or is suffering present harm insofar as parole is concerned, the court cannot say that plaintiff has suffered the loss of a liberty or property interest within the meaning of the fourteenth amendment. Accordingly, summary judgment is appropriate for defendants on this claim.

The final claim raised by plaintiff is that his trusty status was revoked without a hearing because of the letters written by

defendants. As a result, he alleges; he has suffered the loss of good-time credits "that could have been earned on a trusty status job" and has been reclassified as "medium security." He also contends that the presence of the letters in his file will continue to adversely affect his chances to obtain trusty status in the future.

As to all the alleged deprivations set out above, with the exception of the alleged loss of good time credits, the court concludes that plaintiff has suffered no grievous loss sufficient to invoke the procedural protections of the due process clause. *Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). In *Meachum*, the Supreme Court was confronted with the issue of

> whether the Due Process Clause of the Fourteenth Amendment entitles a state prisoner to a hearing when he is transferred to a prison the conditions of which are substantially less favorable to the prisoner, absent a state law or practice conditioning such transfers on proof of serious misconduct or the occurrence of other events. We hold that it does not. *Id.* at 216, 96 S.Ct. at 2534.

■ There is no question but that plaintiff's freedom of movement is more restricted by his reclassification as medium security than when he was on trusty status. This does not constitute, however, a "grievous loss" sufficient to invoke due process requirements. "That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules." *Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). Indeed, this circuit has held that denial of certain benefits, including trusty status and assigned jobs, are not sufficient to invoke fourteenth amendment procedures. *Marchesani v. McCune*, 531 F.2d 459 (10th Cir. 1976). As the Supreme Court has recently stated:

> As long as the conditions or degree of confinement to which the prisoner is sub-

jected are within the sentence imposed upon him and are not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight. The Clause does not require hearings in connection with transfers whether or not they are the result of the inmate's misbehavior or may be labeled as disciplinary or punitive. *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976).

■ The remaining issue for the court is whether plaintiff was entitled to due process because, as a result of his reclassification from trusty to medium security, he lost an opportunity to earn good-time credits. Plaintiff alleges in this respect that he "suffered a loss of good time that *could have been earned* on a trusty status job." (Emphasis added). In the court's view, plaintiff's loss of the opportunity to earn good-time credits does not deprive him of a constitutionally protected right.

In *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court held that due process was required as to Nebraska state prison inmates who face disciplinary proceedings in which they could lose good-time credits because the Court found that under Nebraska law inmates had a statutory right to good-time credits and that Nebraska law also provided that such credits could be forfeited or withheld only for serious misconduct. The Court said in *Wolff*:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." *Cafeteria Workers v. McElroy*, 367 U.S. 886, 894,

1183

[81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230] (1961). But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated. *Id.* at 557, 94 S.Ct. at 2975. The *Wolff* holding was clarified in *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), where the Court explained that "The liberty interest protected in *Wolff* had its roots in *state* law, and the minimum procedures appropriate under the circumstances were held required by the Due Process Clause 'to insure that the *state-created* right is not arbitrarily abrogated.'" *Id.* at 226, 96 S.Ct. at 2539 (emphasis added).

*Meachum* involved the question of whether Massachusetts prisoners who were transferred from a medium security to a maximum security prison had a right to due process. The Supreme Court held they did not because Massachusetts law created in the prisoners no right to be housed in any particular prison. The Court stated:

Here, Massachusetts law conferred no right on the prisoner to remain in the prison to which he was initially assigned, defeasible only upon proof of specific acts of misconduct. Insofar as we are advised, transfers between Massachusetts prisons are not conditioned upon the occurrence of specified events. On the contrary, transfer in a wide variety of circumstances is vested in prison officials. The predicate for invoking the protection of the Fourteenth Amendment as construed and applied in *Wolff v. McDonnell* is totally nonexistent in this case. Id. at 226–27, 96 S.Ct. at 2539.

Again, in *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976), the Court further clarified its position, explaining:

We held in *Meachum v. Fano,* that no Due Process Clause liberty interest of a duly convicted prison inmate is infringed when he is transferred from one prison to another within the State, whether with or without a hearing, absent some right or justifiable expectation rooted in state law that he will not be transferred except for misbehavior or upon the occurrence of other specified events. *Id.* at 242, 96 S.Ct. at 2547.

In *Montanye,* the Court found a New York state prisoner's transfer from one prison to another did not require a hearing, whether or not such transfer resulted from the prisoner's misbehavior or was disciplinary or punitive, where under New York law the prisoner had no right to remain at any particular prison and no justifiable expectation that he would not be transferred unless found guilty of misconduct.

In this case, therefore, the test of whether due process was required in connection with the plaintiff's reclassification is whether state law created in plaintiff some right or justifiable expectation of receiving the good-time credits which he claims he cannot acquire so long as he is denied trusty status. The court particularly notes in this regard that plaintiff *has not alleged that he has lost, as a result of the reclassification, any good-time credits which he previously earned.* He merely alleges that he is being denied the opportunity to work and earn good-time credits as a trusty in addition to those earned prior to the reclassification. Plaintiff alleges no law and no facts which suggest the basis for any reasonable expectation on his part of a right to earn good-time credits by working as a trusty. Furthermore, *no such right is guaranteed by* state statute. *See* 57 Okla. Stat. § 138 (Supp. 1977–78). Indeed, the statute appears to make no distinction between the potential for earning good-time credit as a trusty or earning such credit in a different classification. Even if plaintiff's assertion that he is presently being denied the opportunity to earn good-time credits is true, however, the court concludes that such a loss does not deprive plaintiff of a constitutionally protected right. The court again

**1184**

notes that no allegation is made that previously earned good-time credits were forfeited by plaintiff due to the revocation of his status as trustee.

The court concludes that plaintiff has shown no violation of his constitutional rights by the defendants' acts of writing the letters in question and putting them in his file. Accordingly, plaintiff's motion for summary judgment is denied and defendants' motion for summary judgment in their favor is granted against plaintiff as to all claims.

ORDERED this 29th day of March, 1978.