Timothy C. PROCK, Petitioner,

v.

DISTRICT COURT OF PITTSBURG COUNTY; Norman B. Hess, Warden, Oklahoma State Penitentiary, Respondents.

No. 54385.

Supreme Court of Oklahoma.

April 7, 1981.

Rehearing Denied July 13, 1981.

Timothy C. Prock, pro se.

Jan Eric Cartwright, Atty. Gen., by Janet L. Cox, Oklahoma City, for respondents.

OPALA, Justice:

The issues to be answered in this proceeding are: [1] Did the trial curt err in declining to assume jurisdiction of a prisoner's petition alleging denial of certain federally-protected liberty interests by prison authorities acting in contravention of state-fashioned internal prison discipline rules? [2] Are the prisoner's allegations sufficient to raise constitutionally-cognizable claims to an administrative prison discipline hearing?

We hold that (a) access to district court must be accorded, of right, to a prisoner who asserts a federally-protected claim to a prison discipline hearing and (b) the facts alleged by the prisoner, both here and below, are sufficient to entitle him to a hearing on every claim which he anchored on the prison officials' alleged invasion of his state-recognized liberty interests.

## THE ANATOMY OF PRIOR LITIGATION

■ The petitioner, Timothy Prock [Prock], an inmate at the state penitentiary, petitioned the District Court, Pittsburg County, for a writ directing the warden to release him from solitary confinement and to restore certain of his privileges created by prison rules but withheld by an allegedly arbitrary internal discipline action. The trial judge summarily denied his petition, believing, no doubt, that he was without legal authority to interfere with internal management of prison facilities.[1] Prock now seeks in this court a writ to review the trial court's adverse decision and to pronounce that the district court is by law invested with power necessary to afford him the relief he sought below.

## PRISONER'S ALLEGATIONS

Prock's allegations are:

Until August 21, 1979, he was classified as a medium security prisoner and was housed with the general inmate population. On that date he came to be transferred, without notice, to administrative lockup. This move resulted in his loss of certain privileges which include a monthly "bonus" and earned good-time credits. This was contrary to prison rules. Antecedent to his solitary confinement transfer, he was not allowed to appear before the institutional classification committee. He was merely informed by a prison employee that the transfer was being effected because he was then under investigation for alleged involvement in a fellow prisoner's homicide. On August 27th Prock did complete a form for an inmate grievance report to the warden. That form was returned to him the next day. He was told that he had failed clearly to define the problem. From the rejection of his grievance he next lodged an appeal to the Deputy Director of the Oklahoma Department of Corrections [Department]. That official responded with a written statement that the grievance was being returned to the warden who would provide him with an explanation for the transfer. Prock remained in solitary confinement some 29 days before being brought before the institutional classification committee. At his appearance before that body he was told that no change was possible in his custodial condition so long as he remained in the lockup. The administrative actions taken against him while he was kept segregated from the general inmate population are said to have been contrary to prison rules in the following particulars: (a) his case was not reviewed weekly, (b) he did not receive a written investigative report of the reasons leading to his segregation, (c) he did not receive a psychological evaluation every thirty days and (d) he was not allowed to have daily physical exercise, to attend educational classes nor to participate in any of the available rehabilitative programs.

During his five-month lockup he was not questioned by anyone with respect to the suspected misconduct which brought about his isolation from the general prison population. Nor was there placed in his file a followup investigation report with respect to his alleged complicity in the prison homicide. While the cloud of a suspected serious misconduct remains in his prison file, he has been afforded *no* administrative forum to clear himself or to procure a removal of the

1. Disciplinary regulation of prisoners has been largely an arena beyond the pale of judicial remedies. *Ex parte Ridley*, 3 Okl.Cr. 350, 106 P. 549, 554–555, 26 L.R.A.N.S. 110 [1910]; *Coburn v. Schroeder*, 71 Okl.Cr. 405, 112 P.2d 191, 193 [1941]. A purely administrative officer, i. e. one without "judicial powers", cannot have his discretion controlled by the judiciary. No appeal lies from his actions. *State ex rel. Lowe v. Pruett, Clerk of Dist. Court*, 43 Okl. 766, 144 P. 365, 366 [1914].

detrimental information from his prison record. Prison rules provide for the deletion from an inmate's record of all those references to a disciplinary breach of which he has been cleared. The cloud of homicide-complicity attribution remains in his file and adversely affects his eligibility for transfer to a trusty status or for parole.

## APPOINTMENT OF COUNSEL

 Prock is uncounseled in this court. His request for the appointment of an attorney has been denied by a predecisional order. The protection of the Federal Constitution's VIth Amendment extends only to "criminal prosecutions". The issues for resolution here all deal with administration of internal prison discipline. This case does not fall under the protected VIth Amendment rubric. The state's own counterpart of the VIth Amendment's assistance-of-counsel clause—Art. 2 § 20, Okl.Con.—is also co-extensive with criminal prosecutions. It hence does not confer on Prock the right to secure a free lawyer. Moreover, Prock has not shown here any of those "special circumstances" which may make assistance of counsel essential as a matter of federal or state due process.[2]

## THE PROCEDURAL FRAMEWORK OF REVIEW

Prock's *pro se* paperwork for review of the district court's disposition is titled "Petition for Writ of Certiorari and/or Application to Assume Original Jurisdiction". Since the plea for corrective relief sought by him from this court was filed here within the 30-day statutory time limit for appeal, we treat Prock's complaint as a peti-

tion in error.[3] The question to be answered is whether the district court's denial of Prock's petition was anchored on a statutorily-imposed limitation of judicial authority or constituted mere self-abnegation of power whose exercise is constitutionally mandated.

I.

## JURISDICTION OF THE DISTRICT COURT TO REVIEW A FEDERAL-LY–PROTECTED INMATE CLAIM TO A HEARING ON AN ALLEGED BREACH–OF–INTERNAL–PRISON–DISCIPLINE COMPLAINT

Our statutes provide *no* explicit access to the district court to a prisoner who seeks review of a warden's administrative action taken in the course of maintaining internal prison discipline. Prock stands before us *without the benefit of a state-created claim* to question, in a judicial forum, any constitutionally impermissible agency behavior of prison authorities acting in the administration of correctional discipline.

 This lacuna in our state law is itself offensive to constitutional notions of legality. A prisoner's access to the courts to litigate constitutionally-cognizable claims to a denied liberty interest is clearly mandated by federal case law.[4] If the parties to the proceedings are subject to state-court jurisdiction, a state court is authorized—*nay required*—to review violations of federal constitutional rights which occur within its borders. In short, prisoners must be provided with "some clearly defined method

2. *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 [1973].

3. *Fisher v. Wilson,* Okl., 328 P.2d 420, 423 [1958]; *Carder v. Court of Criminal Appeals,* Okl., 595 P.2d 416, 420 [1979].

4. It is well established by federal case law that prisoners have a constitutional right of access to the courts. *Ex parte Hull,* 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 [1941]; *Cochran v. Kansas,* 316 U.S. 255, 62 S.Ct. 1068, 86 L.Ed. 1453 [1942]; *Johnson v. Avery,* 393 U.S. 483,

89 S.Ct. 747, 21 L.Ed.2d 718 [1969]; *Younger v. Gilmore,* 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 [1971]; *Cruz v. Hauck,* 404 U.S. 59, 92 S.Ct. 313, 30 L.Ed.2d 317 [1971]; *Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 [1972]; *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 [1974]; *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 [1974]; *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 [1977]; *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 [1979].

by which they may raise claims of denial of federal rights".[5]

■ While statutory state law does not authorize review of actions by prison officials in dealing with internal breach of discipline, claims for vindication of constitutionally-protected interests, which may arise from prisoner misconduct disputes, must receive judicial scrutiny by the command of the Federal Government's fundamental law.

## II.

## THE NATURE OF THE INMATE'S CLAIMS

· Prock argues that certain arbitrary and summary action of the prison officials, acting in contravention of existing regulations, violated the minimum standards of due process. These actions are said to have consisted of (a) his transfer to solitary confinement and (b) improper treatment while he remained in that custodial surrounding.

■■ The test for gauging a prisoner's claim to a due-process-mandated administrative hearing that precedes imposition of disciplinary sanctions is whether his liberty or property interest was in fact threatened with invasion. Both the United States Constitution and Oklahoma's own fundamental law require that governmental action affecting life, liberty or property conform to that measure of fairness which accords with the minimum standards of due process.[6]

■ The basis for Prock's complaint is that he was deprived of liberty interest by a modification in his custodial surrounding which was so significant as to trigger a due process demand for a hearing.[7] We are not quite in accord with Prock's view. The notion that every state action with adverse consequences for a prison inmate is *per se* capable of raising a due process shield stands rejected by the United States Supreme Court.[8] A change in the conditions of one's confinement, although it may have a substantial adverse impact on a prisoner—no matter how drastic—will not *alone* suffice to raise due process implications.[9]

5. *Young v. Ragen*, 337 U.S. 235, 238–239, 69 S.Ct. 1073, 1074–1075, 93 L.Ed. 1333, 1336–1337 [1949]. In *Young*, a state prisoner, who had sought a writ of habeas corpus in the state court, raised "substantial questions under the due process clause". His petition was denied without a hearing. The Court held that the state *must* provide some procedure by which a prisoner can raise his claims regarding denial of federal rights. See also *Hart v. Eyman*, 458 F.2d 334, 340 [9th Cir. 1972]; *Gibson v. Jackson*, 578 F.2d 1045, 1054 [5th Cir. 1978].

6. Art. 2 § 7, Okl.Con.; XIVth Amend., U.S. Const.

7. Prock relies on *Wright v. Enomoto*, 462 F.Supp. 397, 402 [N.D.Cal.1976] aff'd 434 U.S. 1052, 98 S.Ct. 1223, 55 L.Ed.2d 756 [1978].

8. *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 [1976]; *Moody v. Daggett*, 429 U.S. 78, 88, 97 S.Ct. 274, 279, 50 L.Ed.2d 236, 244 [1976].

9. *Meachum v. Fano*, supra note 8; A prisoner does not forfeit all constitutional protections as a result of his conviction and custodial status. He retains a cluster of some important rights that the courts must be alert to protect. *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129, 97 S.Ct. 2532, 2539–2540, 53 L.Ed.2d 629, 641 [1977]; *Meachum v. Fano*,

supra note 8, 427 U.S. at 225, 96 S.Ct. at 2538, 49 L.Ed.2d at 459; *Wolff v. McDonnell*, supra note 4, 418 U.S. at 555–556, 94 S.Ct. at 2974, 41 L.Ed.2d at 950–951; *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495, 501 [1974]; *Bell v. Wolfish*, supra note 4, 441 U.S. at 545–546, 99 S.Ct. at 1877, 60 L.Ed.2d at 472–473 [1979]. He may claim the protection of the Due Process Clause to prevent additional deprivation of life, liberty or property. *Meachum v. Fano*, supra note 8; *Wolff v. McDonnell*, supra note 4. Although a prisoner retains some constitutional rights, these may nonetheless be subject to restrictions and limitations. "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the consideration underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356, 1369 [1948]; *Jones v. North Carolina Prisoners' Labor Union*, supra, 433 U.S. at 125, 97 S.Ct. at 2537–2538, 53 L.Ed.2d at 638; *Wolff v. McDonnell*, supra note 4, 418 U.S. at 555, 94 S.Ct. at 2974, 41 L.Ed.2d at 950. The fact of confinement, as well as the legitimate goals and policies of the penal institution, operate to abridge even the retained constitutional rights of prisoners. *Jones v. North Carolina Prisoners' Labor Union*, supra, 433 U.S. at 125, 97 S.Ct. at 2538, 53 L.Ed.2d at 638; *Pell v. Procunier*, supra, 417 U.s. at 822, 94 S.Ct. at 2804, 41 L.Ed.2d at 501.

■ While neither our state nor the federal constitution does guarantee any particular custodial condition to an incarcerated prisoner, the state may by statutory law or regulations limit its official latitude to change the conditions of confinement and limit the circumstances under which breach-of-discipline sanctions may be imposed.[10] When this occurs, a liberty interest is at once created. Due process will protect this state-fashioned interest to insure that it is neither arbitrarily meted out nor abrogated. A person's liberty interest may thus receive federal protection, even though it is itself but a creature of state law. "The touch-

stone of due process is protection of the individual against arbitrary action of government." [11]

## A. State Law and State Prison Regulations

■ Oklahoma prison authorities have fashioned written regulations dealing with procedures and policies for controlling prisoner misconduct. They have imposed limits on the sweep of their discretionary action in changing a prisoner's custody status by conditioning intra-prison transfers on the existence of a specified standard.[12]

10. This test was formulated by the United States Supreme Court in *Meachum v. Fano,* supra note 8, a companion case to *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 [1976]. Both cases stand for the proposition that the liberty interest of a prisoner is not infringed when he is transferred to another prison within the state, with or without a hearing, absent some right or justifiable expectation *rooted in state law* that he will not be transferred except for misbehavior or upon the occurrence of other specified events. *Meachum* addressed the question whether state prisoners transferred from medium to maximum security facility had a right to a due-process-mandated hearing. The Court held that change in the nature of a prisoner's confinement is not sufficient to invoke due process because confinement of the prisoner in any state institution is within the power of the state. The Court's holding is anchored on the premise that state law did not create a legal interest in the prisoner to be assigned to any particular prison facility. This, the Court said, distinguishes *Meachum* from *Wolff v. McDonnell,* supra note 4, in which a prisoner was held entitled to minimum procedural safeguards before he could be deprived of good-time credits. There the liberty interest, though not constitutionally created, had been structured by state statute. Procedural due process was deemed necessary in *Wolff* to insure that the state-created liberty interest was not arbitrarily abrogated. Following these cases, federal circuit courts have consistently looked to the underlying state law before granting or denying a transferred prisoner's claim to due-process-mandated liberty interest protection. *Mitchell v. Hicks,* 614 F.2d 1016 [5th Cir. 1980]; State-law interest may be based on statutes or prison rules and regulations. *Meachum v. Fano,* supra note 8, 427 U.S. at 229, 96 S.Ct. at 2540, 49 L.Ed.2d at 461–462.

11. *Wolff v. McDonnell,* supra note 4, 418 U.S. at 558, 94 S.Ct. at 2976, 41 L.Ed.2d at 952.

12. The State Board of Corrections—the governing board of the Department—has statutory authority to establish policies for the Department. 57 O.S. 1971 § 503; 57 O.S.Supp. 1974 § 504. The Director of the Department has by statute complete discretion in his supervision of all penal facilities. He can, consistent with the general policies established by the Board, prescribe rules pertaining to the operation and control of the inmates and of the penal facilities. 57 O.S.Supp. 1979 §§ 507, 510. When promulgated in the form of policies and operations memoranda, such rules have the force and effect of law.

The regulations pertinent to our discussion here are: Oklahoma Department of Corrections Guidelines for Classification Decision Making, No. OP–060103 Revised, October 15, 1978 and Oklahoma Department of Corrections Disciplinary Procedures, No. OP–060402 Revised, May 10, 1979.

By these rules a prisoner is placed in solitary confinement—close custody—if he presents a current and continuing danger to the safety and good order of the institution, staff or other prisoners in the institution. No assignment is made to close custody unless certain limited and specified substantive criteria are met. A hearing before the institutional classification committee is required before a prisoner may be placed in close custody. A pre-hearing assignment may be made by the warden, deputy warden or a designated staff member if a substantial reason dictates emergency action. A substantial reason exists when the prisoner constitutes a safety or security risk and an investigation is pending for a suspected *criminal* act or omission. If a pre-hearing assignment to close custody is made on the basis permitted by the rule, the action must be reviewed by the classification committee within three working days.

These rules also entitle a prisoner to having an investigation of his case completed within a reasonable time. *He is entitled to be informed*

Under these rules Prock has a justifiable "expectation", conferred by state-fashioned regulations, to a written explanation for his extended lockup confinement and to a final resolution of the homicide investigation in which he is suspected of complicity. Should he be cleared of the charges, he may have his prison record purged of misconduct attribution. Implicit in this expectation is Prock's claim to protection from an unreasonably extended curtailment of his rule-fashioned privileges.

### B. Loss of Good-Time Credit

■ Loss of good-time credit, in this case, does not appear to violate Prock's due-process-protected interests. Prock bases his claim to good-time credit on the holding in *Wolff v. McDonnell*,[13] a Nebraska case, where the Court held that a state prisoner was entitled to due-process protection of good-time credit because he had in it a special liberty interest created by state statute.[14]

Oklahoma statutory law is distinguishable. The terms of 57 O.S.Supp. 1976 § 138 [15]—the statute effective at the time of his administrative lockup—provide that good-time credit shall be given to an inmate who works or attends school. The privilege of receiving good-time credit, while in administrative segregation, is clearly discretionary because it is based on the warden's recommendation.

The loss of good-time credit which results from a prisoner's transfer to solitary confinement has been held not to deprive a prisoner of a due-process claim to a hearing.[16] This holding is premised on the rationale of *Meachum v. Fano*[17] and *Montanye v. Haymes*.[18] In the absence of a state-conferred right, there is thus no infringement of due-process-protected liberty interest when a prisoner's good-time credits are curtailed following his administrative segregation.[19] We take cognizance of federal case law and hold that neither Oklahoma

*in writing of the reasons for any extended investigation and why he remains in solitary confinement.* During his confinement he has a right to a weekly review of the pending investigation. The rules specifically provide for "privileges on the same basis as the general [prison] population," including daily exercises and educational privileges. The only exception specified is, of course, the freedom of unrestricted movement. *If an inmate is not found guilty of violating prison rules and regulations, all references to the alleged violations shall be removed from his individual record, both manual and computer-generated.*

13. Supra note 4.

14. *Wolff v. McDonnell*, supra note 4. The Nebraska statutes in *Wolff* not only mandated the issuance of good-time credit for satisfactory behavior but also specified that the credit could be forfeited only for serious misbehavior.

15. The terms of 57 O.S.Supp. 1976 § 138 provide in pertinent part:
"A. Every inmate of a state correctional institution who engages in work, attends school or participates in a vocational training program, approved or provided by the Department, shall have one (1) day deducted from his sentence for each day that he engages in any such activity. Earned credits may be subtracted from the total accumulated by an inmate, upon recommendation of the institution disciplinary committee, following due process, and approved by

the warden or superintendent. Provided that lost credits may be restored by the warden or superintendent upon approval by the classification committee. * * *
C. * * * Any inmate classified by the Department of Corrections as physically or mentally disabled for work or placed into administrative segregation, by the institutional administration, may be allowed up to one (1) day credit off his sentence for good behavior for each day served with a maximum credit of two hundred sixty (260) days per year. All inmates shall be allowed as a deduction from their term of imprisonment the jail term, if any, served prior to being transported to the penitentiary pursuant to the judgment and sentence by which the inmate is committed.
D. The accumulated time of every inmate shall be tallied each month and filed by the institution where the sentence is being served. A copy of this record shall be sent to the Department on a quarterly basis and a copy shall be provided the inmate."

16. *Dolph v. Crisp*, 446 F.Supp. 1179, 1183–1184 [E.D.Okl.1978]; *Gardner v. Benton*, 452 F.Supp. 170 [E.D.Okl.1977]; *Twyman v. Crisp*, 584 F.2d 352, 356 [10th Cir. 1978].

17. Supra note 8.

18. Supra note 10.

19. *Gardner v. Benton*, supra note 16.

statutory law nor state regulation entitles a prisoner transferred to close custody to a liberty interest in good-time credit.

Prock has not cited us to—nor do we know of any—statute or regulation that creates a liberty interest in the monthly "bonus" he received before his transfer to solitary confinement. We hence conclude that unless Prock is able to come up with a state-conferred interest or expectation, he is not entitled to claim a monthly bonus for the period during which he may have been improperly held in administrative lockup.

## CONCLUSION

 While state statutes do not authorize or require a judicial review of internal prison disciplinary actions, both the federal and the state Due Process Clauses[20] command that prisoners with claims to interests or expectations of a constitutionally-protected nature be afforded access to courts. The district court's denial of jurisdiction must hence be treated as an act of self-abnegation of power with which the court is clearly invested—a power whose exercise is mandated by both federal and state fundamental law.

Judgment of the trial court is reversed and cause is remanded with directions to re-examine *all* the fact and law issues to determine if the allegations and proof support some cognizable claim or claims. Should the district court find that its review of the allegedly objectionable actions of prison officials is not now in order because administrative remedies had not been exhausted, then a writ should issue directing the warden forthwith to set in motion the rule-fashioned adjudicative machinery within the prison system for the purpose of resolving every essential fact issue that remains undetermined.

It is apt to admonish the judicial service of this State to be mindful of Justice Brennan's observation in his concurring opinion in *Case v. Nebraska*, 381 U.S. 336, 345–346,

85 S.Ct. 1486, 1492, 14 L.Ed.2d 422, 428 [1965], in which he said:

> "None can view with satisfaction the channeling of a large part of state criminal business to federal trial courts. If adequate state procedures, presently all too scarce, were generally adopted, much would be done to remove the irritant of participation by federal district courts in state criminal procedure."

This observation is equally apropos with respect to prison discipline cases. Judicial lethargy is unlikely to help the state solve whatever problems may still exist in its penal system.[21]

Reversed and remanded.

IRWIN, C. J., and WILLIAMS, LAVENDER and DOOLIN, JJ., concur.

BARNES, V. C. J., and HODGES, SIMMS and HARGRAVE, JJ., dissent.

**20.** Art. 2 § 7, Okl.Con.

**21.** We do *not* intimate that the trial judge failed to follow the beaten path of the applicable state

precedent. His decision, while resting on a correct exposition of our extant case law, is patently in discord with the currently prevailing notions of federal due process.