Carl Demetrius **MITCHELL**, Doc # 87999, Appellant,

v.

Larry **MEACHUM**, Director, et al., Appellees.

No. 70689.

Supreme Court of Oklahoma.

Nov. 15, 1988.

Rehearing Denied April 11, 1989.

Carl Demetrius Mitchell, Stringtown, pro se.

Robert H. Henry, Atty. Gen., and Steven Spears Kerr, Asst. Atty. Gen., Oklahoma City, for appellees.

HODGES, Justice.

Carl Demetrius Mitchell, an inmate at the Mack H. Alford Correctional Center (MHACC) in Stringtown, Oklahoma, incarcerated for the charge of larceny of merchandise after former conviction of a felony (appellant), brought this civil rights action pro se in the District Court of Atoka County pursuant to 42 U.S.C. § 1983, 12 O.S.Supp.1985 §§ 2001–2027 and 12 O.S. 1981 §§ 1451–1462 seeking habeas corpus and/or mandamus relief for expungement of his misconduct reports, restoration of all lost earned credits and an unconditional reinstatement to original security status. Mitchell contends his transfer to MHACC from the house arrest program was intended as punishment for alleged prisoner misconduct; therefore, he is entitled to judicial

review of the administrative decision to transfer him. He asserts the trial court erroneously sustained the prison authorities' (appellees') motion to set aside the default judgment. He further argues the trial court erroneously dismissed his case denying him due process and equal protection of the law.

On November 2, 1987, Mitchell filed a petition in the District Court of Atoka County asserting as invalid the disciplinary action taken against him by prison authorities for an alleged law violation concerning a charge of larceny of merchandise while he was living in Tulsa County on house arrest status. Mitchell was arrested on January 31, 1987, for such charge; however, the case was dismissed at preliminary hearing for lack of prosecution when the complaining witness did not appear.

The Department of Corrections (DOC) transferred Mitchell to MHACC due to the larceny charge. A disciplinary hearing was held against Mitchell for the alleged violation of a city, state or federal law. Based upon evidence including a witness's identification in a photographic line-up, the disciplinary committee found Mitchell guilty of the offense and revoked 280 days of his earned time credits. The Director of DOC denied Mitchell's appeal. Mitchell's misconduct conviction resulted in a change in security status and reclassification.

## I.

## TRANSFER TO ANOTHER STATE PRISON FACILITY

Mitchell claims because the district court dismissed the larceny charge against him he did not violate any city, state or federal law which would support a prisoner misconduct conviction. Consequently, he argues, his reclassification and resultant transfer were illegal.

In *Prock v. District Court of Pittsburg County*, 630 P.2d 772, 779 (Okla.1981), this Court stated in its conclusion:

"While state statutes do not authorize or require a judicial review of internal prison disciplinary actions, both the federal and the state Due Process Clauses

command that prisoners with claims to interests or expectations of a constitutionally-protected nature be afforded access to courts." (footnote omitted).

In *Prock*, we recognized neither the Oklahoma Constitution nor the United States Constitution guarantees any particular custodial condition to an incarcerated prisoner. However, a "state may by statutory law or regulations limit its official latitude to change the conditions of confinement and limit the circumstances under which breach-of-discipline sanctions may be imposed." We found there the Oklahoma prison authorities by written regulations have imposed limits on the sweep of their discretionary action in changing a prisoner's custody status by conditioning *intra-prison* transfers.

The present case is distinguishable from the facts in *Prock* in that here we are not dealing with a prisoner transferred to solitary confinement. Rather, Mitchell was transferred to general inmate population in another state prison facility. Mitchell does not cite any specific statute or regulation that creates a liberty interest which limits the prison authorities' discretion to transfer him to general inmate population in MHACC, nor has our independent research revealed such limitation.

Furthermore, in *Morris v. Meachum*, 718 P.2d 1354 (Okla.1986), we recently held a prisoner does not have a substantial personal right in the situs of his confinement, relying on *Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983). The United States Supreme Court quoted with approval language from *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), in its *Olim* opinion stating:

" 'The initial decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause, although the degree of confinement in one prison may be quite different from that in another. The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in any of of its prisons.

... Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose.'" (quoted in *Morris v. Meachum,* 718 P.2d at 1356).

In *Morris,* we observed that change in security status and resultant classification to a more supervised prison environment are the types of discretionary actions which have traditionally been the business of prison administrators rather than the courts.

Our view is additionally supported by the position of the Oklahoma Legislature as expressed in § 301(1)(f) of the Oklahoma Administrative Procedure Act, 75 O.S.1981 §§ 301–326, which specifically exempts from the provisions of that Act "[t]he supervisory or administrative agency of any penal institution, in respect to the institutional supervision, custody, control, care or treatment of inmates, prisoners or patients therein.... "

Therefore, in the instant matter we find the trial court correctly dismissed Mitchell's case with regard to his transfer inasmuch as a prisoner has no liberty interest in the situs of his confinement.

## II.

### LOSS OF EARNED CREDITS

We held in *Prock, supra,* there is no infringement of due-process liberty interest when a prisoner is denied the privilege of receiving good-time credits while in administrative segregation because neither Oklahoma statutory law nor state regulation created a liberty interest in such circumstances. However, the factual situation in the instant case is different in that Mitchell argues he has a state created liberty interest in earned credits lost due to his disciplinary action rather than merely an *opportunity* to earn credits. We find his argument persuasive.

■ Credit for good conduct is a matter of statutory right under 57 O.S.Supp.1984 § 138, which provides in pertinent part:

"A. Except as provided in subsection B of this section and in Section 224 of Title 57 of the Oklahoma Statutes, every inmate of a state correctional institution who satisfactorily engages in work or attends school, approved or provided by the Department shall have one (1) day deducted from the term of imprisonment for each day that he engaged in the activity."

Section 138 specifically prescribes the conditions which must be met for the loss of earned credits:

"Earned credits may be subtracted from the total credits accumulated by an inmate, upon recommendation of the institution's disciplinary committee, *following due process,* and upon approval of the warden or superintendent." (emphasis added).

There is no room for construction or provision for further inquiry when the Legislature plainly expresses its intent. *Hughes Drilling Co. v. Morgan,* 648 P.2d 32, 35 (Okla.1982). We thus find Mitchell has a state created liberty interest in earned credits and is entitled to due-process protection.

In *Prock supra,* we observed both the federal and the state Due Process Clauses require that prisoners with claims to interests or expectations of a constitutionally protected nature be afforded access to courts. Accordingly, with respect to Mitchell's claim of loss of earned credits the trial court erred in declining to assume jurisdiction. Therefore, the trial court is reversed and the case remanded to determine whether or not Mitchell's state-created liberty interest in earned credits was arbitrarily abrogated.

Although § 138 requires due process to be followed it does not delineate what process is due in the forfeiture of earned credits. In *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the United States Supreme Court articulated the minimum requirements of procedural due process appropriate in prison disciplinary proceedings involving the revocation of a state created liberty interest in good-time credits. It noted the full panoply of rights due a defendant in a criminal prosecution does not apply to prison disciplinary

proceedings. *Wolff* requires in the context of state prison disciplinary proceedings that the inmate must be afforded: (1) advance written notice of the claimed violation; (2) a written statement by the factfinder as to the evidence relied on and the reasons for the disciplinary action; and (3) the right to call witnesses and present documentary evidence in his defense when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals. 418 U.S. at 563–567, 94 S.Ct. at 2978–2980. It viewed these procedures as representing a reasonable accommodation between the interests of the inmates and the needs of the institution. In *Superintendent v. Hill*, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), the Court subsequently held that revocation of good time does not comport with the minimum requirements of procedural due process unless the findings of the prison disciplinary board are supported by some evidence in the record.

Upon remand the district court must accordingly review the record and determine whether Mitchell's prison disciplinary proceeding which resulted in the loss of earned credits met these minimum due process requirements set forth in *Wolff* and *Hill* to insure that his state created liberty interest was not arbitrarily abrogated.

### III.

### CRUEL AND UNUSUAL PUNISHMENT CLAIM

■ Because Mitchell's claim of cruel and unusual punishment raised in a letter to this Court was not presented to the trial court, this Court will not consider it on appeal. *Frey v. Independence Fire and Cas. Co.*, 698 P.2d 17, 10 (1985); *McGhee v. McAllister*, 474 P.2d 940, 940–41 (Okla. 1970); *Ajax Contractors, Inc. v. Myatt*, 424 P.2d 30, 35 (Okla.1967).

### IV.

### VACATION OF DEFAULT JUDGMENT

Lastly, we must address Mitchell's argument concerning the trial court's vacation of the default judgment which was granted in favor of Mitchell. In *Beck v. Jarrett*, 363 P.2d 215, 218 (Okla.1961), we found the defendant's failure to appear at the trial was the result of a misunderstanding which did not amount to the type of negligence as would justify the sustaining of the default judgment. We quoted with approval from *Hodges v. Alexander*, 44 Okla. 598, 145 P. 809 (1915) stating:

"'It is an abuse of discretion for the Court to refuse to open a judgment by default where the answer presents a good defense, and the showing made by the defendant is a reasonable excuse for the absence of the defendant and his attorney at the time of the trial, with no negligence on his part, and where no substantial prejudice would result from the sustaining of such motion.'"

Additionally, a default judgment must be set aside if the court had no jurisdiction over the subject matter of the action. *Farmers' Union Co-op. Royalty Co. v. Woodward*, 515 P.2d 1381, 1384 (Okla. 1973).

■ In the present case appellee's attorney failed to appear at the December 4, 1987, hearing because he thought it was unnecessary after being told by the Court Clerk of Atoka County that Mitchell had not filed a writ of habeas corpus ad testificandum. Appellee timely filed a motion to set aside the default judgment explaining his misunderstanding. Under the circumstances, we find the order of the trial court setting aside the default judgment was not an abuse of discretion.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH DIRECTIONS to conduct a due process hearing on the loss of earned credits as set out in Part II.

DOOLIN, C.J., HARGRAVE, V.C.J., and LAVENDER, OPALA, ALMA WILSON and SUMMERS, JJ., concur.

SIMMS, J., concurs in result.

KAUGER, J., recused.